**KUHNLE BROTHERS, INC.,**
Plaintiff–Appellant,

v.

**COUNTY OF GEAUGA, et al.,**
Defendants–Appellees.

No. 95–3758.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 15, 1996.

Decided Jan. 7, 1997.

David M. Ondrey (argued and briefed), Thrasher, Dinsmore & Dolan, Chardon, OH, for Plaintiff-Appellant.

Mark B. Marein (argued and briefed), Synenberg & Marein, Cleveland, OH, for Defendants-Appellees.

Before: MERRITT, COLE, and GODBOLD,* Circuit Judges.

MERRITT, Circuit Judge.

The plaintiff trucking company appeals from a district court order finding its § 1983 claims barred by the statute of limitations and granting summary judgment for the defendants. On appeal, the plaintiff argues that the district court applied the wrong limitations period, and that the defendants' resolution barring through-truck traffic on certain roads worked an ongoing violation, so that the limitations period did not begin to run until the defendants lifted the ban. We find that the district court applied the correct limitations period, but that one of the asserted harms was ongoing for statute of limitations purposes. Therefore, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings, although we assess double costs against plaintiff-appellant for improper conduct of counsel for reasons explained below.

## I. FACTS

Plaintiff Kuhnle Brothers, Inc. is a trucking company located and doing business in Geauga County, Ohio. Kuhnle regularly hauls material from the Munn Road Sand & Gravel quarry. Prior to May of 1989, Kuhnle's drivers relied primarily on Munn Road to access the quarry. In May of 1989, however, Kuhnle and defendant Geauga County entered a settlement agreement with respect to litigation that is not otherwise relevant to this appeal. Under the terms of the settlement,

Kuhnle agreed to keep its trucks off of Munn Road (except for a short portion necessary to access the Munn Road quarry) and instead to instruct its drivers to approach the Munn Road quarry along either Auburn Road or State Route 44.

In January of 1990, Geauga County enacted Resolution 90–9, barring through truck traffic on several county roads—but not on the portion of Auburn Road mentioned in the settlement agreement. The County then filed a state court action seeking a declaratory judgment that barring through truck traffic on Auburn Road would not breach its settlement agreement with Kuhnle. Kuhnle filed a counterclaim challenging the validity of Resolution 90–9 under Ohio law as beyond the scope of the County's authority. The state trial court dismissed the County's declaratory judgment request, but upheld the validity of Resolution 90–9. Subsequently, a year and a half later (on August 20, 1991), Geauga County passed Resolution 91–87, banning through truck travel on Auburn Road, including the portion of Auburn Road specified in the May 1989 settlement agreement.

On June 1, 1992, the Ohio Court of Appeals reversed the state trial court, finding that the County was without authority to enact Resolution 90–9. The Ohio Supreme Court affirmed the Court of Appeals on November 17, 1993. *Geauga County Bd. of Comm'rs v. Munn Rd. Sand & Gravel, Inc.*, 67 Ohio St.3d 579, 621 N.E.2d 696 (1993).

Kuhnle filed the instant action in Ohio state court on May 13, 1994—more than two years after Geauga enacted Resolution 91–87, but less than two years after the County stopped enforcing Resolution 91–87 due to the June 1, 1992 Ohio Court of Appeals decision. The defendants removed the case to federal court. Kuhnle seeks monetary damages under 42 U.S.C. § 1983, claiming that Resolution 91–87 was invalid and that its enforcement violated the Due Process Clause of the Fourteenth Amendment and constituted an invalid taking of property without just

---

* The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

compensation.[1] Kuhnle seeks monetary damages for the additional expenses incurred because Kuhnle was required to use alternate, longer routes to access the Munn Road quarry.

The district court granted summary judgment for the defendants, holding that § 1983 actions arising in Ohio are subject to a two-year statute of limitations and that the limitations period began to run when Geauga County enacted Resolution 91–87.

## II. ANALYSIS

Kuhnle raises two issues on appeal. First Kuhnle argues that because it originally filed its complaint in Ohio state court, then either the federal district court should have applied the four-year statute of limitations that the state court would have applied or else the district court should have remanded the case to state court. Second, Kuhnle argues that the statute of limitations did not begin to run until the ongoing violation caused by the through-truck ban ceased when the County stopped enforcing the ban on June 1, 1992.

### A. Limitations Period for § 1983 Actions Arising in Ohio

█ In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court held that statutes of limitations for § 1983 actions are borrowed from state law, but that the question of how to characterize § 1983 actions to determine the most analogous state statute of limitations is a question of federal law. The *Wilson* Court determined that the proper limitations period for a § 1983 action is the limitations period for personal injury actions in the state in which the § 1983 claim arises. In *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), the Supreme Court further clarified that when a state has multiple statutes of limitations for different categories of personal injury actions, the residual personal injury statute of limitations applies.

Following *Wilson* and *Owens*, this Circuit, sitting en banc, decided that the limitations period for § 1983 actions arising in Ohio is the two-year period found in Ohio Rev.Code § 2305.10. *Browning v. Pendleton*, 869 F.2d 989 (6th Cir.1989). In reaching this decision, the *Browning* court considered Ohio Rev. Code §§ 2305.10 & .11, but did not discuss § 2305.09(D). Since *Browning*, several Ohio courts of appeals have rejected *Browning* and applied § 2305.09(D)'s four-year statute of limitations to § 1983 actions. These courts include the Eleventh District Court of Appeals of Ohio, which has jurisdiction over appeals from the trial court in which Kuhnle originally filed its complaint. *Bojac Corp. v. Kutevac*, 64 Ohio App.3d 368, 581 N.E.2d 625 (1990).

Kuhnle argues that the federal district court should have applied the four-year statute of limitations because that is the statute of limitations that would have governed the action, pursuant to *Bojac*, if the defendants had not removed the case to federal court. The *Bojac* decision, however, is not binding on this Court. In fact, since *Bojac* was decided, this Court has ruled that *Bojac* does not alter the binding effect of the *Browning* precedent. *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 & n. 2 (6th Cir.1995). We are bound by *LRL Properties*, and thus hold that the district court acted correctly when it applied a two-year statute of limitations to Kuhnle's claims.

█ Kuhnle argues that if the district court was bound to apply the two-year statute of limitations, concerns of federalism and fairness dictate that the district court should have remanded the case to state court, rather than dismissing it. This argument ignores the Supreme Court's holding in *Wilson v. Garcia*, 471 U.S. at 269–71, 105 S.Ct. at 1943–44, that the characterization of § 1983 claims for purposes of borrowing a state statute of limitations is a question of federal law. This is not a case in which there is substantive state law that differs from federal law. Rather, here there is a single correct statute of limitations under federal law that applies regardless of whether the action is

---

1. Kuhnle did not specify in its complaint whether its takings claim is brought under the Ohio Constitution or under the Fifth and Fourteenth Amendments to the United States Constitution. To the extent to which Kuhnle asserted state law claims, the district court declined to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) and Kuhnle has not challenged that decision.

brought in state or federal court. Notions of federalism do not require this court to follow a state court's holdings with respect to federal questions.

■ Nor will our holding on this issue cause any unfairness. There will be no Ohio plaintiffs who unfairly reap the rewards of a four-year statute of limitations, since defendants in § 1983 actions brought in Ohio will always be able to remove such actions to federal court. Kuhnle's argument that Ohio plaintiffs are "penalized" when they file § 1983 actions in state court within the state courts' four-year statute of limitations ignores the much greater "penalty" that defendants in such actions would suffer if their statutory right to remove such actions to federal court were effectively eliminated.

■ Kuhnle's reliance on *Henry v. Metropolitan Sewer District*, 922 F.2d 332 (6th Cir.1990), is misplaced. In *Henry*, this Court held that when district courts lack jurisdiction over § 1983 claims removed from state court because those claims are barred by the Eleventh Amendment, such claims should be remanded to the state court, rather than dismissed without prejudice. This result, however, is based on the fact that the Eleventh Amendment does not affect the jurisdiction of the state courts, so that such claims may be viable in their original forum. Here, however, when the correct, two-year statute of limitations is applied, Kuhnle's claims are barred whether they are brought in state or federal court.[2]

## B. Date of Onset of the Limitations Period

■ The date on which the statute of limitations begins to run in a § 1983 action is a question of federal law. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1984). Ordinarily, the limitations period starts to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 273. "In determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991) (citing *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir.1989)).

Kuhnle claims that it began diverting its trucks onto alternate routes when Geauga enacted Resolution 91–87 in August of 1991. Therefore, Kuhnle clearly knew at that time of the injury forming the basis of this action. Nevertheless, Kuhnle argues that the County's enforcement of Resolution 91–87 was a "continuing violation" and that, as a result, the limitations period did not start to run until the County stopped enforcing Resolution 91–87 on June 1, 1992. *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n. 15, 88 S.Ct. 2224, 2236 n. 15, 20 L.Ed.2d 1231 (1968) (finding action not time-barred due to "a continuing violation ... which inflicted continuing and accumulating harm"); *Dixon*, 928 F.2d at 215–18 (discussing application of the continuing violation doctrine in employment discrimination cases). In order to determine whether or not there was a continuing violation for statute of limitations purposes, we must evaluate each of Kuhnle's constitutional claims separately.

■ Turning first to Kuhnle's takings claim, we note as an initial matter that this claim may be unripe for adjudication because Kuhnle has not filed an inverse condemnation proceeding in state court. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194–97, 105 S.Ct. 3108, 3120–22, 87 L.Ed.2d 126 (1985). It is unclear whether or not an adequate inverse condem-

---

**2.** Kuhnle's attorney's reliance on *Arnold v. Duchesne County*, 810 F.Supp. 1239 (D.Utah 1993), is a violation of counsel's duty of candor to this court. Kuhnle's attorney (David M. Ondrey, of the firm of Thrasher, Dinsmore & Dolan) places substantial reliance on the district court opinion in *Arnold* without bringing to this court's attention the fact that the Tenth Circuit reversed the holding on which Ondrey relies. 26 F.3d 982 (10th Cir.1994). This reversal occurred more than one year before Ondrey filed Kuhnle's opening brief before this Court. This behavior would

seem to violate Ohio Disciplinary Rules 1–102(A)(4) & (5) and 7–102(A)(5). Double costs of the appeal should be assessed against appellant for this reason. *See* 28 U.S.C. § 1912.

This footnote and our assessment of costs should not be construed to represent a finding of intentional misconduct. We have no way of knowing whether counsel's conduct was intentional or merely negligent. We do not know what was in counsel's mind at the time and therefore accept his explanation that his conduct was unintentional and negligent.

nation proceeding exists under Ohio law. *Compare Kruse v. Village of Chagrin Falls, Ohio,* 74 F.3d 694, 700 (6th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 71, 136 L.Ed.2d 31 (1996), *with Silver v. Franklin Township, Bd. of Zoning Appeals,* 966 F.2d 1031, 1035 (6th Cir.1992). We need not resolve this issue, however, because even if Kuhnle's takings claim is ripe for review, it is barred by the statute of limitations.

If Resolution 91–87 did, in fact, "take" any property interests belonging to Kuhnle,[3] that taking occurred when the resolution was enacted. "In the takings context, the basis of a facial challenge is that the very enactment of the statute has reduced the value of the property or has effected a transfer of a property interest. This is a single harm, measurable and compensable when the statute is

passed." *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 688 (9th Cir.1993); *accord National Adver. Co. v. City of Raleigh,* 947 F.2d 1158, 1163–66 (4th Cir.1991).[4]

■ Kuhnle's substantive Due Process claim for deprivation of property is time-barred for the same reason. Any deprivation of property that Kuhnle suffered was fully effectuated when Resolution 91–87 was enacted, and the statute of limitations began to run at that time. *See Ocean Acres Ltd. Partnership v. Dare County Bd. of Health,* 707 F.2d 103 (4th Cir.1983).[5]

■ Kuhnle's substantive Due Process claim for deprivation of liberty is another matter. Kuhnle claims that Resolution 91–87's through truck traffic ban deprived it of liberty interests assertedly created by a fundamental constitutional right to intrastate travel and by the prior settlement agreement

3. Although the defendants' summary judgment motion was based, in part, on Kuhnle's alleged failure to state a valid cause of action, the district court did not reach this issue and we express no opinion regarding the substantive merits of Kuhnle's claims.

4. *Gordon v. City of Warren,* 579 F.2d 386 (6th Cir.1978) is not to the contrary. In *Gordon,* the city planning commission issued a stop order and directed the plaintiff to dismantle partially constructed buildings within a setback area claimed by the city. When the plaintiff refused to dismantle the buildings, the city sought an injunction in state court. The Michigan courts ultimately held that the setback ordinance was unconstitutional. The plaintiff then brought a takings claim in federal court—more than three years (the limitations period urged by the defendants) after the city had issued the stop order, but less than three years after the Michigan Supreme Court overturned the stop order. This Court held that the action was not time-barred because "[u]ntil the Michigan Supreme Court issued its decision the question whether the city had in fact taken the plaintiffs' property for public use remained in controversy." *Id.* at 392. Thus, the city had notice that Gordon disputed its ordinance and was able to preserve needed evidence and plan accordingly. In the instant case, on the other hand, Kuhnle did not assert any legal challenge to Resolution 91–87 until it brought this action more than two years after Geauga enacted the resolution. To allow Kuhnle's takings claim to proceed would defeat one of the "primary goal[s] of statutes of limitations"— predictability as to whether or not a defendant is subject to a legal action. *Owens v. Okure,* 488 U.S. 235, 240, 109 S.Ct. 573, 576, 102 L.Ed.2d 594 (1989); *see also Wilson v. Garcia,* 471 U.S. 261, 271, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985) ("In compelling circumstances, even

wrongdoers are entitled to assume that their sins may be forgotten."); *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979) ("Statutes of limitations ... represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'") (quoting *Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)); *Guaranty Trust Co. v. United States,* 304 U.S. 126, 136, 58 S.Ct. 785, 790, 82 L.Ed. 1224 (1938) ("The statute of limitations is a statute of repose, designed to ... make an end to the possibility of litigation after the lapse of a reasonable time.")

Kuhnle's challenge to the validity of Resolution 90–9 does not alter this result. The roads affected by Resolution 90–9 were different from the roads affected by Resolution 91–87. Even though the County may have anticipated that the courts' decision with regard to Resolution 90–9 would also determine the validity of Resolution 91–87, the fact that no legal challenge to Resolution 91–87 had been brought within two years of its enactment allowed the County to engage in financial planning without fear that it would be liable for takings with respect to the roads affected by Resolution 91–87.

5. Kuhnle's complaint could also be read to assert a violation of procedural due process, but Kuhnle did not press this claim in its brief in opposition to the County's motion for summary judgment. Any procedural due process claim Kuhnle may have is clearly time-barred. Any procedural defects necessarily occurred prior to or concurrently with the enactment of Resolution 91–87 more than two years before Kuhnle initiated this action.

between Kuhnle and the County. If such liberty interests do in fact exist in this case—a question that will have to be decided on remand because it is not before us and we express no opinion on it[6]—then each day that the invalid resolution remained in effect, it inflicted "continuing and accumulating harm" on Kuhnle. *Hanover Shoe,* 392 U.S. at 502 n. 15, 88 S.Ct. at 2236 n. 15.

■ Geauga argues that, despite the ongoing prohibition of through-truck traffic under Resolution 91–87, there was no continuing violation because Geauga did not commit any invalid acts, as required under *Dixon,* 928 F.2d at 218, after it enacted the resolution. The resolution, however, barred Kuhnle from using the roads in question on an ongoing basis, and thus actively deprived Kuhnle of its asserted constitutional rights every day that it remained in effect. A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment. "[T]he continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations." *Virginia Hosp. Ass'n v. Baliles,* 868 F.2d 653, 663 (4th Cir.1989), *aff'd in part on other grounds sub nom Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); *accord National Adver. Co. v. City of Raleigh,* 947 F.2d 1158 (4th Cir.1991).

*Baker v. F & F Inv. Co.,* 489 F.2d 829 (7th Cir.1973) is instructive here. In *Baker,* black homeowners sued various federal officials and agencies, claiming that they were charged excessive and discriminatory prices for their homes due to racially discriminatory denials of federal home mortgage insurance. The court held that the statute of limitations did not begin to run when the plaintiffs signed the installment contracts for their houses because "[t]he defendants' wrongful conduct continued after the installment contracts were signed; injury to plaintiffs continued to accrue after the installment contracts were signed; and, had defendants at any time ceased their wrongful conduct, fur-

ther injury to plaintiffs could have been avoided." *Id.* at 836. As a result, "a new injury was inflicted on plaintiffs each day.... Consequently, a new limitations period began to run each day as to that day's damage." *Id; see also Centifanti v. Nix,* 865 F.2d 1422, 1432–33 (3d Cir.1989) (suspended attorney's claim that reinstatement procedures were unconstitutional continued to accrue on each day of the alleged wrong).

The three *Baker* criteria are satisfied here. Geauga's invalid through-truck traffic ban continued after the date of enactment of Resolution 91–87; injury to Kuhnle continued to accrue; and further injury to Kuhnle could have been avoided if the County had repealed the resolution. Thus, unlike the plaintiffs in *Dixon,* Kuhnle suffered a new deprivation of constitutional rights every day that Resolution 91–87 remained in effect, rather than merely suffering additional harm from a prior unconstitutional act. Since the last alleged deprivation occurred less than two years before Kuhnle filed its complaint, Kuhnle's action is not time-barred.

■ Although the fact that no one brought a legal challenge to Resolution 91–87 within two years of its enactment does not insulate the resolution from legal challenge for all time, the statute of limitations is not entirely without effect. Statutes of limitations serve two purposes: requiring plaintiffs to bring claims before evidence is likely to have grown stale; and allowing potential defendants repose when they have not been put on notice to defend within a specified period of time. *See Wilson v. Garcia,* 471 U.S. 261, 271, 105 S.Ct. 1938, 1944, 85 L.Ed.2d 254 (1985); *United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979); *Guaranty Trust Co. v. United States,* 304 U.S. 126, 136, 58 S.Ct. 785, 790–91, 82 L.Ed. 1224 (1938). To allow damages for the entire period during which a law is in effect when a plaintiff challenges the law long after it was enacted would frustrate both of these purposes. Instead, just as a new injury was allegedly inflicted on Kuhnle each day that Resolution 91–87 was in effect,

---

**6.** In the discussion that follows, we assume, without deciding, and for the purposes of discus-

sion only, that the asserted liberty interests do exist.

"a new limitations period began to run each day as to that day's damage." *Baker,* 489 F.2d at 836. Therefore, Kuhnle is entitled to recover only those damages that were caused by Resolution 91–87 on or after the date two years immediately prior to the date on which Kuhnle filed this action. *See id.; Hanover Shoe,* 392 U.S. at 502, 88 S.Ct. at 2236 (limiting damages to the "period permitted by the applicable statute of limitations."); *but cf. Taylor v. Meirick,* 712 F.2d 1112, 1118–19 (7th Cir.1983) (allowing damages for the entire period of continuing wrong in the business tort context).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM summary judgment for the defendants with respect to Kuhnle's takings and deprivation of property claims, REVERSE summary judgment with respect to Kuhnle's deprivation of liberty claim, and REMAND the case for further proceedings. For the reason set out in footnote two, double costs are assessed in this case against plaintiff-appellant under 28 U.S.C. § 1912.