Joyce TOLBERT, et al., Plaintiffs,

v.

OHIO DEPARTMENT OF
TRANSPORTATION, et
al., Defendants.

No. 3:97 CV 7592.

United States District Court,
N.D. Ohio,
Western Division.

Feb. 6, 1998.

William B. Senhauser, Equal Justice Foundation, Toledo, OH, for Joyce Tolbert, Venita Rodgers, Veronica Cherry, Laurel Nemec, Patricia Nettles and Stella Campbell.

Richard Makowski, Office of the Assistant Attorney General, Cleveland, OH, Karen E. Asbury, Office of the Attorney General, Tole-

do, OH, for Ohio Dept. of Transp. and Jerry Wray.

Lourdes Santiago, Edward M. Yosses, Toledo, OH, for City of Toledo.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' motion to dismiss Plaintiffs' amended complaint. For the following reasons, Defendants' motion will be granted.

Also pending in this case are Defendants' motion to dismiss Plaintiffs' original complaint and Defendants' motion to strike certain affidavits Plaintiffs submitted in connection with their opposition to Defendants' first motion to dismiss. Those motions will be denied as moot.

### I. BACKGROUND

Plaintiffs, residents of the Cherrywood apartment complex in Toledo, Ohio, filed this civil rights action to challenge Defendants' refusal to erect sound barriers next to a new highway project, the Buckeye Basin Greenbelt Parkway ("the Parkway"), that is being constructed near their homes. Plaintiffs allege that Defendants' decision not to include sound mitigation measures along that section of the Parkway was influenced by the fact that a significant majority of the residents in the area are African–American.

The Parkway, once complete, will be a four-lane highway in Toledo, Ohio that links the downtown area to the northeast end of town.[1] The Parkway was first proposed in 1972 and federal funding was first requested for the project in 1974. During the 1970's and early 1980's, a series of seventeen public meetings was held on the project, with opportunity for notice and comment.

A noise analysis for the Parkway was approved by the Federal Highway Administration ("FHWA") on January 4, 1982. A portion of that noise analysis, performed in January 1980, concluded that no structures in the area of the apartments that are the subject of this suit would encounter significant noise impacts when comparing the total design year noise with existing noise levels, and that noise barriers along the Parkway in the area of the subject apartments would be impractical due to the influence of traffic-generated noise from nearby Cherry Street and the industrial background noise from the adjacent area in general. Those conclusions were incorporated into the final Environmental Impact Statement ("EIS") for the project, which was approved by the FHWA on April 16, 1984.

Between 1984 and 1995, certain changes were made to the plans for the Parkway. Federal environmental regulations require a supplemental EIS when there are "substantial changes" to the original action or "significant new circumstances or information." 40 C.F.R. § 1502.9(c)(1). On January 19, 1995, the FHWA determined that no supplemental EIS documentation was required. The construction project began in 1996, and is scheduled to be completed in mid–1998.

On August 26, 1997, Plaintiffs filed this action, alleging that Defendants' decision not to include sound mitigation measures along the section of the Parkway near their homes was influenced by the fact that a significant majority of the residents in the area are African–American. They bring suit under a number of federal anti-discrimination statutes, all of which have statutes of limitations of two years or less. Defendants have moved to dismiss this action on multiple grounds, prominent among which is a statute of limitations defense. Defendants allege that Plaintiffs' cause of action arose at the latest on January 19, 1995, the date on which the FHWA determined that no supplemental EIS was necessary, and is barred by the two-year statute of limitations. Plaintiffs have filed opposition to Defendants' motion, and Plaintiffs have replied thereto. The Court discusses the parties' contentions below.

### II. DISCUSSION

#### A. Motions to Dismiss

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b), the

---

1. This Court has previously had occasion to review the planning of the Parkway in *Sierra Club v. Pena*, 915 F.Supp. 1381 (N.D.Ohio 1996), *aff'd*, 120 F.3d 623 (6th Cir.1997). A more detailed discussion of the project's history is contained in that Opinion.

function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Westlake, supra,* at 858. *See generally* 2A James W. Moore, Moore's Federal Practice, ¶ 12.07[2.–5] (2d ed.1994).

### B. *Statute of Limitations*

Defendants argue that all of Defendants' actions relating to noise impact analysis and noise abatement measures on the Parkway occurred prior to April 16, 1984, so that Plaintiffs' cause of action accrued on that date, and is therefore time-barred. At the latest, argue Defendants, the cause of action accrued on January 19, 1995 when the FHWA determined that a supplemental EIS was not required; that date is also outside the two-year statute of limitations governing Plaintiffs' action.

Plaintiffs respond that their claims are timely because (a) the cause of action did not accrue until construction on the Parkway began in 1996, because they did not have notice of the facts underlying their claim, and (b) Defendants' acts constitute a continuing violation.

### 1. *Accrual of Cause of Action*

■ The first issue before the Court is the date on which the cause of action accrued. A cause of action arising out of an improper EIS generally accrues when the EIS is approved. *Sierra Club v. Slater,* 120 F.3d 623, 631 (6th Cir.1997). The law does permit some leeway, however, when the plaintiff has no way of discovering the existence of the cause of action until some time

after the cause of action arises. In such case, the cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the complaint. "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Dixon v. Anderson,* 928 F.2d 212, 215 (6th Cir.1991); *Sevier v. Turner,* 742 F.2d 262, 272–73 (6th Cir.1984).

■ Plaintiffs argue that their claims did not accrue until the summer of 1996 because: (a) they did not know until construction on the Parkway began that the Parkway would pass near their homes without sound mitigation measures being taken; (b) they did not know until summer of 1996 that it was possible to install sound walls as a mitigation measure; and (c) some of the plaintiffs did not move into the Cherrywood apartment complex until after the EIS was adopted. Plaintiffs also argue that, since this is a discrimination case, the cause of action did not accrue until they were on notice that they were being treated differently from the residents of predominantly white neighborhoods, and that did not occur until 1996, when they learned that sound walls had been approved for a predominantly white neighborhood.

The Court disagrees. As to Plaintiffs' first argument, Plaintiffs' own complaint states that seventeen public meetings were held while the Parkway project was being considered. Seventeen public meetings provides a more than ample opportunity for any citizen to appear and raise questions about the sound mitigation plans for his or her area. Plaintiffs' second argument is similarly meritless. Contrary to Plaintiffs' suggestion in their brief, highway sound walls are not an "arcane detail of highway planning" known to few lay people; they are common, ordinary structures. As to Plaintiffs' third argument, the mere fact that they were not yet residents of the Cherrywood apartment complex did not prevent them from attending the public meetings.

Finally, Plaintiffs' argument that their cause of action did not arise until work began on sound walls for a separate highway project halfway across town, while creative, is

not persuasive. If this Court were to adopt such an argument, the very concept of a statute of limitations on actions involving public works projects would be seriously undermined, if not eradicated. In any city of reasonable size, roads are resurfaced, sewer systems are renovated, and freeways are built or widened on a fairly regular basis. And, as this case demonstrates, such projects often have lifetimes that are measured in years, rather than weeks or months. If the existence of a separate public works project—at any stage from planning to completion—in another part of the city could delay the onset of the statutory period of limitations, no amount of time passage could be guaranteed to produce the repose that is contemplated by statutes of limitations. There have been no changes to the noise mitigation plans for the Parkway since 1984. Those plans were made public in the early 1980's. The cause of action accrued more than two years before Plaintiffs filed this action.

## 2. *Continuing Violation*

■ Having determined that Plaintiffs' cause of action accrued on April 14, 1984, the Court must next determine whether Defendants' refusal to alter the sound mitigation measures for the Parkway constitutes a continuing violation, so that Plaintiffs' action is not barred. Plaintiffs argue that even if their cause of action accrued in 1984, the noise to which they will be exposed once the Parkway is open constitutes a continuing violation, so that a new statutory period begins with each day the Parkway is in operation.

The question of whether a plaintiff has stated a cause of action for a continuing violation in connection with a public works project, when the project was planned and approved outside the limitations period, and commenced within the limitations period, appears to be an issue of first impression. The parties have not cited to any case, and this Court is aware of none, which has addressed this precise issue.[2] The Court's research has, however, uncovered a small number of cases in which Federal Courts of Appeals

have addressed the issue of whether a continuing violation existed when the act of which the plaintiff complained consisted of a discrete precipitating event that occurred outside the limitations period, which was followed by one or more subsequent events that perpetuated the effects of the allegedly wrongful precipitating event. Those cases are instructive.

*Kuhnle Bros., Inc. v. County of Geauga,* 103 F.3d 516 (6th Cir.1997), involved an alleged infringement of the plaintiff's right to intrastate travel. In 1989, the plaintiff trucking business had entered into a consent agreement with the defendant county, by which the trucking business was permitted to use a certain road to haul material from a quarry. In 1991, the county banned truck travel on that same road. In 1994, almost a year after the expiration of the statute of limitations, the trucking company sued, claiming that the county's acts had deprived it of a liberty interest in intrastate travel. The Sixth Circuit assumed for purposes of the statute of limitations analysis that the asserted liberty interest existed, and held that the plaintiff had stated a claim for a continuing violation of its rights, because the ban on truck travel "actively deprived Kuhnle of its asserted constitutional rights every day that it remained in effect. A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment." 103 F.3d at 522. In holding that the plaintiff had stated a claim for a continuing violation, the Sixth Circuit found that the claim satisfied three criteria: (1) the defendant's wrongful conduct continued after the precipitating event; (2) injury to the plaintiff continued to accrue after the precipitating event; and (3) had the defendant at any time ceased its conduct, further injury to the plaintiff could have been avoided. *Id.*

*Palmer v. Board of Educ.,* 46 F.3d 682 (7th Cir.1995), addressed an allegedly discriminatory school closing plan. Prior to 1987, there had been two junior high schools in the defendant school district, with one school in a

---

**2.** Courts rarely use the "continuing violation" doctrine outside the area of Title VII discrimina-

tion. *LRL Properties v. Portage Metro Housing Auth.,* 55 F.3d 1097, 1105 n. 3 (6th Cir.1995).

predominantly African–American neighborhood and one school in a predominantly white neighborhood. In 1987, the predominantly African–American school was closed, and its students were bussed to the other school. Three years later, the parents of the African–American students sued, claiming that their local school had been selected for closing because it was located in an African–American neighborhood. The Seventh Circuit held that a claim of racial discrimination arises each day a child is assigned to school under a racially discriminatory policy. They explained:

The premise of [cases declining to find a continuing violation] is that the [wrongdoer] took one dispositive act. Like punching someone in the nose, this act may lead to injury in the future, but when there is only one wrongful act the claim accrues with the first injury. A series of wrongful acts, however, creates a series of claims. A public employer that applies different salary schedules to black and white employees commits a new wrong every pay period, and the fact that an employer has been violating the Constitution for a generation does not permit it to commit fresh violations. Just so here. Every fall the school board decides which buildings to use and which children shall be assigned to which schools. If, as plaintiffs believe, the school board's explanation for closing Deer Creek is a pretext for discrimination, then each year's decision to leave the building shuttered is a new violation—as is each assignment plan that compels black pupils to board busses for a distant junior high school that they would not be required to attend if the population of University Park had a lighter complexion.

46 F.3d at 685–86 (citations omitted).

*National Advertising Co. v. City of Raleigh,* 947 F.2d 1158 (4th Cir.1991), was brought as a challenge to a 1983 municipal ordinance that reduced the permissible size of billboards, permitting the owners of existing large billboards a "five-year grace period" in which to remove the signs. Five years after the ordinance was passed, the city ordered the billboard owner to remove its signs. The billboard owner sued, claiming that the ordinance constituted an unconstitutional "taking" of its property. The Fourth Circuit held that the case was time-barred, and that the continuing violation doctrine did not apply.

A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation. Here, any taking occurred at the time of the ordinance's enactment; what continued was the ill effect of the ordinance's enactment and the alleged taking. No continuing unlawful acts have been shown.

In general, to establish a continuing violation, the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice.

\* \* \*

Upon the adoption of the ordinance, National was in a position to challenge it. A continuing wrong theory should not provide a means of relieving plaintiff from its duty of reasonable diligence in pursuing its claims.

947 F.2d at 1166, 1168 (citations omitted).

*Gilbert v. City of Cambridge,* 932 F.2d 51 (1st Cir.1991), was brought as a challenge to an ordinance requiring any owner of rental apartments to obtain a permit before converting the property from apartments to condominiums, and a refusal by the zoning board to issue the plaintiffs such a permit. The First Circuit held that no claim for a continuing violation had been made. They explained that:

"courts must be careful to differentiate between discriminatory acts and the ongoing injuries which are the natural, if bitter, fruit of such acts. On the facts of this case, the Southview plaintiffs' argument obfuscates what we have termed the "critical distinction" between a continuing act and a singular act that brings continuing consequences in its roiled wake. The single act challenged—the Board's denial of the Southview plaintiffs' permit application—comprised a discrete event."

932 F.2d at 59 (citations omitted).

Finally, *Vandiver v. Hardin County Bd. of Educ.,* 925 F.2d 927 (6th Cir.1991) involved a

high-school student who had been home-schooled in tenth grade and thereafter returned to public high school to complete his secondary education. When the student returned to public school at the beginning of eleventh grade, he was informed that he could receive credit for tenth grade only if he passed a series of equivalency tests for that grade level. The student refused to take the tests for religious reasons. He was permitted to enroll in, and satisfactorily completed, an eleventh grade course of study. The next year, the school refused to classify the student as a senior, because he had not received credit for tenth grade. The student sued, after the limitations period had expired for events occurring when he entered eleventh grade, but within the limitations period for events occurring when he had attempted to register as a senior. The Sixth Circuit held that the plaintiff had not stated a claim for a continuing violation, because the school's denial of twelfth-grade status was "mere adherence to a discrete decision regarding Brian's academic standing in the fall of [the prior year]."

It is possible to glean several lessons from these cases. The first, and perhaps most obvious, lesson is that the line between continuing violations and singular acts with continuing consequences is a fine one, and the distinction can be murky. The second and related lesson is that application of the three-part Sixth Circuit test, which looks at whether the defendant's wrongful conduct continued after the precipitating event, whether the injury to the plaintiff continued to accrue after the precipitating event, and whether further injury to the plaintiff could have been avoided if the defendant had ceased its conduct, is not always clear in practice. The determination of whether any single prong of the test is met—whether, for instance, the defendant's wrongful conduct continued after the precipitating event—is itself based on multiple factors, none of which is dispositive, and which Courts do not always make explicit. Third, a single, isolated post-event act is not sufficient to create a continuing violation; a continuing practice must be shown. Fourth, the continuing violation doctrine cannot be used to "save" an action the plaintiffs could have brought within the limitations pe-riod if they had used due diligence. Finally, the continuing violation doctrine is rarely used outside of the Title VII context, and applies only in exceptional circumstances.

Having considered the case at bar in light of these principles, the Court finds that this is not an exceptional case justifying the application of the continuing violation doctrine. The alleged wrongful acts all took place as part of a decisionmaking process that concluded in 1984. Plaintiffs allege no changes to the Parkway that occurred after that date. Defendants' conduct in declining to reconsider the 1984 plans, and in constructing the freeway in accordance with those plans, are, like the defendants' actions in *National Advertising* and *Vandiver,* mere adherence to a discrete decision made at an earlier date. Plaintiffs cannot use a continuing violation theory to relieve them from their duty of due diligence in pursuing their claims, especially when construction of the Parkway is nearly complete, and when ample opportunity was provided for objections to the lack of sound walls along the Parkway during the project's planning stages. No continuing violation has been shown.

Plaintiffs' cause of action accrued on April 16, 1984, when the final EIS for the Parkway was approved. Plaintiffs have shown neither that cause exists for tolling the statute of limitations, nor the existence of a continuing violation. Plaintiffs' cause of action is therefore time-barred, and must be dismissed.

## C. *Merits of Plaintiffs' Claim*

■ Although it is not necessary to the Court's determination, the Court finds further that Plaintiffs could not prevail on the merits even if they had standing to bring their claim. Where, as here, the agency action is facially neutral, the Court cannot find that the action violates civil rights laws solely because it results in a disproportionate impact on African–Americans. Proof of a discriminatory intent or purpose is required to show a violation of those laws. *See Hernandez v. New York,* 500 U.S. 352, 359–60, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 264–65, 97 S.Ct.

555, 563, 50 L.Ed.2d 450 (1977); *see also Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). "Discriminatory purpose implies more than intent as volition or intent as awareness of consequences. It implies that the decision-maker selected a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Hernandez,* 500 U.S. at 360, 111 S.Ct. at 1866 (quoting *Personnel Adm'r v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979)) (internal ellipses omitted). Thus, in *Washington v. Davis,* the Supreme Court upheld a job-related employment test that white people passed in greater numbers than African-Americans; in *Arlington Heights v. Metropolitan Housing Dev. Corp* it upheld a zoning board decision that tended to perpetuate racially segregated housing patterns; and in *Personnel Adm'r v. Feeney* it upheld a veterans' preference that benefitted significantly more males than females.

The practice challenged in this case—refusal to erect sound barriers—is facially neutral. It can plausibly and reasonably be explained on the neutral ground that the noise produced at the Parkway off-ramp adjacent to Plaintiffs' apartment complex would not significantly increase the overall noise level at that location, and that sound walls would be unlikely to have an appreciable effect on the total volume. Plaintiffs' amended complaint contains a number of conclusory allegations that Defendants' refusal to provide sound mitigation measures is racially discriminatory, (*see* Am. Compl. at ¶¶ 26,32,-43,46,48 & 50), but have not alleged the existence of a single *fact* that would justify the Court in so finding. They have not pointed to a single racially biased statement in an administrative record over 10,000 pages in length.[3] They have not pointed to a single racially motivated utterance by any member of the municipal government, the planning committee, or state or federal planners involved in the project, arising out of any of the seventeen public meetings, any official or unofficial report, or any correspondence with members of the public. They have not made any allegations of widespread disparate impacts in the provision of public services or in public works projects in Toledo. Not a single *factual* allegation has been made that would justify a finding that the Defendants decided sound walls were unnecessary "because of" the adverse effect that decision would have on African–American residents of Toledo.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's amended complaint is granted. Defendants' motion to dismiss Plaintiffs' original complaint and Defendants' motion to strike certain affidavits Plaintiffs submitted in connection with their opposition to Defendants' first motion to dismiss are denied as moot.

IT IS SO ORDERED.

---

**3.** The Court is permitted to take judicial notice of the administrative record, even on a motion to dismiss. Although the parties have not filed the administrative record in this case, the Court is intimately familiar with that record, such record having been filed in the factually related case of *Sierra Club, et al. v. Federico Pena, et al.,* 3:95 CV 7343.