*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROGER TURUNEN,

Plaintiff-Appellant,

v

DEPARTMENT OF NATURAL RESOURCES,
DIRECTOR OF THE DEPARTMENT OF
NATURAL RESOURCES, and DEPUTY
DIRECTOR OF THE DEPARTMENT OF
NATURAL RESOURCES,

Defendants-Appellees.

UNPUBLISHED
February 29, 2024

No. 363594
Court of Claims
LC No. 22-000061-MM

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

This Court is no stranger to the circumstances of this litigation—a legal dispute arising out a 2010 amendment by the Department of Natural Resources (DNR) that added certain wild boar to its list of prohibited invasive species. In this lawsuit, plaintiff Roger Turunen seeks money damages for harm done to his property and business as a result of the DNR's regulation. Although Turunen filed a notice of intent (NOI) in the Court of Claims in 2011, and he participated in litigation in the circuit court from 2012 through 2021, he did not file his complaint in this matter until 2022. The Court of Claims concluded that the applicable statutory limitations period was three years, that Turunen's claims accrued more than three years before he filed his complaint, and that no basis existed for tolling the statute of limitations. We agree that Turunen's complaint was time-barred, so we affirm.

## I. BACKGROUND

In 2010, the DNR amended its "Invasive Species Order" (ISO), adding certain wild boar and their hybrids to the list of prohibited species.[1] Turunen was a breeder of pigs for the "high fence hunting" (HFH) industry.[2] "The ISO amendment was met with a firestorm of opposition" from individuals like Turunen, whose businesses and livelihood were affected by the change. *Johnson v Dep't of Natural Resources*, 310 Mich App 635, 643; 873 NW2d 842 (2015). Litigation ensued between the DNR and pig breeders, including disputes initiated by Turunen over the legality of the ISO amendment and the classification of some of his pigs as prohibited species.

In 2011, Turunen filed an NOI in the Court of Claims, advising that he intended to pursue a claim against the DNR for money damages arising from the harm to his business and property caused by the allegedly illegal ISO amendment. The NOI asserted that his claim arose on December 10, 2010, just days after the DNR issued the ISO amendment. Turunen did not pursue the claim further at the time but instead sued in 2012 in Baraga Circuit Court for declaratory and injunctive relief. Among other things, Turunen's circuit court complaint requested a declaration that the ISO constituted an unlawful taking of his property. Several other pig breeders commenced similar litigation, and in due course, this Court upheld the facial constitutionality of the ISO amendment. *Johnson*, 310 Mich App at 651-659.

Following *Johnson*, Turunen's lawsuit proceeded in Baraga Circuit Court. In September 2016, shortly before a bench trial, the DNR reevaluated Turunen's animals and identified eight pigs owned by Turunen that the DNR alleged were prohibited by the amended ISO. The Baraga Circuit Court agreed with Turunen that none of these pigs were properly classified as prohibited species. The DNR appealed, and this Court remanded to the circuit court to rule on constitutionality of the ISO amendment as applied to Turunen and to make factual findings on the lawfulness of each particular pig. *Turunen v Dep't of Natural Resources*, unpublished per curiam opinion of the Court of Appeals, issued July 5, 2018 (Docket No. 336075) (*Turunen I*). On remand, the Baraga Circuit Court concluded that the ISO was unconstitutionally vague as applied to Turunen and that defendants failed to establish that any of his pigs were illegal. In the end, this Court reversed the constitutional ruling but affirmed the factual determination that the eight pigs were not prohibited species. *Turunen v Dir of Dep't of Natural Resources*, 336 Mich App 468, 481-489; 971 NW2d 20 (2021) (*Turunen II*).[3] The circuit court litigation ended in 2021 with neither Turunen nor the DNR seeking leave to appeal from this Court's decision in *Turunen II*.

---

[1] The amended ISO prohibited possession of "[w]ild boar, wild hog, wild swine, feral pig, feral hog, feral swine, Old world swine, razorback, eurasian wild boar, [and] Russian wild boar." *Johnson v Dep't of Natural Resources*, 310 Mich App 635, 643; 873 NW2d 842 (2015).

[2] Turunen describes HFH as a business "where customers pay a fee to engage in a simulated hunting experience within an enclosed parcel of land, harvesting animals and using them for human consumption."

[3] Although the eight pigs had died before these appeals were resolved, this Court determined that the matter was not moot. *Turunen II*, 336 Mich App at 479-481.

On May 25, 2021, Turunen filed another NOI in the Court of Claims, alleging that his claims arose on March 18, 2021, which was the day this Court partially ruled in his favor in *Turunen II*. This second NOI alleged that Turunen's claim for money damages was based on the DNR's improper efforts to apply the ISO amendment to his pigs, as well as other improprieties allegedly committed by defendants, resulting in a loss of business, income, and property. Turunen then filed a lawsuit in the Court of Claims on May 5, 2022. He brought a claim for inverse condemnation, alleging that defendants' actions were wrongful and destroyed his property rights without just compensation. He also brought a claim under 42 USC 1983 against the Director and Deputy Director of the DNR, alleging that they knowingly deprived him of compensation for his property.

In lieu of an answer, defendants moved for summary disposition under MCR 2.116(C)(7), asserting that Turunen's NOI was untimely and that his claims were barred by the applicable statute of limitations. Turunen responded that his complaint was timely because his claims did not accrue until this Court's decision in *Turunen II*, and in any event, statutory and equitable tolling applied. The Court of Claims held that the 2011 NOI was timely, but it concluded that the three-year statute of limitations applied to Turunen's claim, and all of the allegedly wrongful conduct committed by defendants occurred more than three years before he filed his complaint. The Court of Claims rejected Turunen's arguments that his claim did not accrue until the conclusion of *Turunen II*, and it rejected his other arguments in support of tolling. The Court of Claims therefore granted summary disposition for defendants under MCR 2.116(C)(7). This appeal followed.

## II. ANALYSIS

Turunen challenges the Court of Claims' determination that the statute of limitation barred his claims on multiple grounds. His primary position is that, under the stabilization doctrine, his inverse condemnation claim did not accrue until this Court's March 2021 decision in *Turunen II*. Alternatively, Turunen argues that statutory and equitable tolling extended the limitations period. Under each of Turunen's theories, his complaint in the Court of Claims was timely.

## A. STANDARDS OF REVIEW

We consider appeals from the Court of Claims as if the Court of Claims were a circuit court. MCL 600.6446(1). Our review of each of the relevant issues is de novo—the Court of Claims' decision to grant summary disposition, whether Turunen's claims are barred by the statute of limitations, issues of statutory interpretation, and the application of equitable tolling. *Breiner v State*, 344 Mich App 387, 404; ___ NW3d ___ (2022). On de novo review, "we give respectful consideration, but no deference" to the Court of Claims' rulings. *Wasik v Auto Club Ins Assoc*, 341 Mich App 691, 695; 992 NW2d 332 (2022). Summary disposition is warranted under MCR 2.116(C)(7) when a claim is barred by the applicable statute of limitations. *Breiner*, 344 Mich App at 404. "In reviewing a motion under Subrule (C)(7), a court accepts as true the plaintiff's well-pleaded allegations of fact, construing them in the plaintiff's favor, and must consider affidavits, pleadings, depositions, admissions, and any other admissible documentary evidence submitted by the parties, to determine whether a genuine issue of material fact exists." *Id*.

## B. INVERSE CONDEMNATION AND THE STABILIZATION DOCTRINE

Relying on the stabilization doctrine, Turunen argues that his inverse condemnation claim did not "stabilize," and therefore did not accrue, until *Turunen II* resolved the circuit court litigation.

The United States and Michigan Constitutions prohibit the government from taking private property for public use without just compensation. US Const, Am V; Const 1963, art 10, § 2. "Michigan recognizes the theory of inverse condemnation as a means of enforcing" these constitutional provisions. *Proctor v Saginaw Co Bd of Comm'rs*, 340 Mich App 1, 16 n 10; 985 NW2d 193 (cleaned up). "Inverse condemnation is a de facto taking in which the government effectively takes property absent formal condemnation proceedings." *Gym 24/7 Fitness, LLC v State*, 341 Mich App 238, 261; 989 NW2d 844 (2022). "No precise formula exists" to determine when a taking has occurred, but "actual physical invasion of the property" is not required. *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 548; 688 NW2d 550 (2004). "Generally, a plaintiff alleging a de facto taking or inverse condemnation must establish (1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property." *Blue Harvest, Inc v Dep't of Transp*, 288 Mich App 267, 277; 792 NW2d 798 (2010).

Pursuant to MCL 600.6452(1), claims against the state are "forever barred unless the claim is filed with the clerk of the court . . . within 3 years after the claim first accrues." This three-year statute of limitation applies to Turunen's claim against the individual defendants under 42 USC 1983,[4] see *Wallace v Kato*, 549 US 384, 387; 127 S Ct 1091; 166 L Ed 2d 973 (2007), and to his inverse condemnation claim against the DNR, see *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). A "claim is filed" for purposes of MCL 600.6452(1) by the filing of a complaint. See *id*. Turunen filed his complaint on May 5, 2022. Therefore, for the complaint to have been timely, Turunen's claims must have "first accrue[d]" no earlier than May 6, 2019. MCL 600.6452(1).

An inverse condemnation claim "accrues 'at the time the wrong upon which the claim is based was done,' MCL 600.5827." *Mays v Governor*, 506 Mich 157, 182; 954 NW2d 139 (2020) (opinion by BERNSTEIN, J.).[5] That time is when "each element of the cause of action, including some form of damages, exists," so it does not occur until the plaintiff first suffered harm. *Id*. "The

---

[4] Section 1983 provides a federal cause of action against government officials who act under color of law to deprive someone of their federal constitutional rights. *Monell v Dep't of Social Servs of City of New York*, 436 US 658, 682; 98 S Ct 2018; 56 L Ed 2d 611 (1978).

[5] The relevant portions of the lead opinion in *Mays* that are discussed in this opinion constitute binding precedent, as they were joined by a majority of the Supreme Court. See *Mays*, 506 Mich at 172 n 5 (opinion by BERNSTEIN, J.); *id*. at 224, 224 n 1 (VIVIANO, J., concurring in part and dissenting in part).

-4-

precise point in time when the running of the limitation period is triggered is determined by the facts and circumstances of each case." *Hart v Detroit*, 416 Mich 488, 504; 331 NW2d 438 (1982).

Under the stabilization doctrine, if an inverse condemnation claim is based on a taking "via a continuous wrong, the statute of limitations does not begin to run 'until the consequences of the condemnor's actions have stabilized.' " *Mays*, 506 Mich at 185 n 10 (opinion by BERNSTEIN, J.), quoting *Hart*, 416 Mich at 504.[6] The doctrine originates from *United States v Dickinson*, 331 US 745, 748-751; 67 S Ct 1382; 91 L Ed 1789 (1947). In that case, the federal government constructed a dam that raised the water level of a river in successive stages, eventually flooding the plaintiffs' properties. *Id.* at 746-747. The dam was completed in 1937, but the final high-water level was not reached until over one year later; at issue was when the plaintiffs' inverse condemnation claim accrued. *Id.* The United States Supreme Court held that the plaintiffs' claims were based on the raising of the water—a "continuous process of physical events"—so the plaintiffs were "not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really 'taken.' " *Id.* at 749. The Supreme Court later clarified that *Dickinson* was meant to be a "limited holding," explaining that the statute of limitations was not a bar to the action in that case "when it was uncertain at what stage in the flooding operation the land had become appropriated to public use." *United States v Dow*, 357 US 17, 27; 78 S Ct 1039; 2 L Ed 2d 1109 (1958). Although some federal courts have held that the stabilization doctrine applies only to gradual physical processes such as flooding, *John R Sand & Gravel v United States*, 457 F3d 1345, 1359-1360 (CA Fed, 2006),[7] our Supreme Court in *Hart* applied the doctrine outside of that context. In *Hart*, 416 Mich at 493, the city of Detroit demolished properties for a redevelopment project but did so before the properties were acquired as a result of nonpayment of taxes and before commencing formal condemnation proceedings. Our Supreme Court held that it was "for the trier of fact to determine whether a continuous wrong was involved here and, if so, when the consequences of this wrong had stabilized, thus triggering the statute of limitations." *Id.* at 504.

Turunen primarily relies on the Sixth Circuit's decision in *Gordon v City of Warren*, 579 F2d 386 (CA 6, 1978), to argue that his claims did not stabilize until final appellate resolution. In *Gordon*, the court held that, under the circumstances of that case, the plaintiff's takings claim had not accrued until our Supreme Court determined that a particular ordinance was unconstitutional. *Id.* at 387, 391-392. *Gordon* explained that the alleged wrong—the taking of property—could be "perpetuated by otherwise legal actions, such as appealing the court decision in this case." *Id.* at 391. Even if we considered *Gordon* persuasive, the Sixth Circuit itself has largely limited *Gordon* to its specific facts. See, e.g., *Trzebuckowski v Cleveland*, 319 F3d 853, 857-858 (CA 6, 2003); *Kuhnle Brothers, Inc v Co of Georgia*, 103 F3d 516, 521 n 4 (CA 6, 1997). And there is a "subtle difference between a continuing violation and a continuing effect of a prior violation." *Trzebuckowski*, 319 F3d at 858. That is, "limitations periods begin to run in response to

---

[6] *Mays* also reaffirmed that *Hart* remains good law and was not affected by caselaw abolishing the "continuing-violations" doctrine that had been applied in other types of cases to extend statutes of limitations. See *Mays*, 506 Mich at 185 n 10 (opinion by BERNSTEIN, J.), discussing *Garb v Macomb Co Community Mental Health Servs*, 472 Mich 263, 284-285; 696 NW2d 646 (2005).

[7] Decisions from federal courts of appeals may be persuasive, but they are not binding on this Court. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004)

discriminatory acts themselves, not in response to the continuing effects of past discriminatory acts." *Id*. (cleaned up). This Court has also recognized that a compensable taking can occur based on an allegedly unconstitutional ordinance before the ordinance is held to be invalid. *Schwartz v Flint*, 187 Mich App 191, 196; 466 NW2d 357 (1991), citing *First English Evangelical Lutheran Church of Glendale v Los Angeles Co*, 482 US 304, 320; 107 S Ct 2378; 96 L Ed 2d 250 (1987). Although neither *Schwartz* nor *First English* used the word "stabilization," they substantively addressed the core issue here: whether absolute finality of relevant litigation is a precondition to accrual of an inverse condemnation claim.

With that background in mind, we conclude that the Court of Claims correctly ruled that Turunen's claims fall beyond the scope of the stabilization doctrine because Turunen does not allege "continuing wrongs" by the DNR. Rather, as the Court of Claims explained, Turunen's claims rest on two distinct "wrongs": "the issuance of the ISO, and the determination by the DNR that at least some of Turunen's pigs qualified as a prohibited invasive species." Neither of these alleged wrongs involves a continuing act or process as envisioned by *Dickinson* and adopted in *Hart*.

The DNR issued the amended ISO in 2010 and determined that eight of Turunen's pigs were prohibited under the ISO following a September 28, 2016 inspection. Although years of litigation followed to determine whether there was any legal merit to the claims that the ISO was unconstitutional and that Turunen's pigs were not, in fact, prohibited species, this litigation was simply "the continuing effect of a prior [alleged] violation" and not a continuous wrong itself. *Trzebuckowski*, 319 F3d at 858; see also *Schwartz*, 187 Mich App at 196. Therefore, while Turunen's inverse condemnation claim arguably accrued earlier,[8] it "first accrue[d]," at the latest, on or around September 28, 2016. MCL 600.6452(1). By that point, the consequences of the ISO to the HFH industry, to Turunen's overall business operations, and to Turunen's lawful possession of certain pigs had undoubtedly materialized. And so, "each element of the cause of action, including some form of damages," existed on his inverse condemnation claim. *Mays*, 506 Mich at 182 (opinion by BERNSTEIN, J.). Because Turunen's claims accrued before May 6, 2019, the Court of Claims correctly determined that they were barred by the three-year limitations period.

## C. STATUTORY TOLLING

Turunen next argues that, even if the stabilization doctrine does not save his claims, statutory tolling renders his complaint timely. The relevant provision, MCL 600.5856(b), tolls the statute of limitations "[a]t the time jurisdiction over the defendant is otherwise acquired." MCL 600.5856(b). Turunen asserts that jurisdiction was "otherwise acquired" over defendants when he filed his 2012 lawsuit in Baraga Circuit Court.

Ordinarily, a court obtains personal jurisdiction over a party by service of process. *Isack v Isack*, 274 Mich App 259, 266; 733 NW2d 85 (2007). That situation is already contemplated by

---

[8] As noted, Turunen sought declaratory relief in his 2012 complaint in Baraga Circuit Court that the DNR's actions constituted an unlawful taking. That prayer for relief necessarily assumed that an inverse condemnation claim had already accrued.

MCL 600.5856(a), under which a limitations period is tolled if the defendant is properly served with the summons and complaint when the complaint is filed. Therefore, the phrase "jurisdiction otherwise acquired" in MCL 600.5856(b) "more logically refers to the ways of acquiring jurisdiction other than by service of process, such as consent of the defendant." *Mair v Consumers Power Co*, 419 Mich 74, 82; 348 NW2d 256 (1984). Tolling under MCL 600.5856(b) may also apply "when an action is dismissed or transferred on some ground other than on the merits (as for example lack of jurisdiction over the subject matter)." *Ashley Ann Arbor, LLC v Pittsfield Charter Twp*, 299 Mich App 138, 153; 829 NW2d 299 (2012). Presuming jurisdiction was "otherwise acquired" over defendants by the 2012 litigation in the Baraga Circuit Court, tolling in this action is unavailable under MCL 600.5856(b) because that litigation *was* ultimately decided on its merits. See *id*.

We also reject any contention that jurisdiction was acquired over defendants by the filing of the 2011 NOI. "Mere knowledge of the existence of a potential claim or action does not toll the statute of limitations or estop one from asserting its provisions." *Higginbotham v Fearer Leasing, Inc*, 32 Mich App 664, 676; 189 NW2d 125 (1971).[9] The Court of Claims found that the 2011 NOI was timely, a finding with which defendants seemingly take no issue. But the 2011 NOI merely put defendants on notice of a possible claim; it did not generate jurisdiction over them. Were we to hold otherwise, a timely filed NOI—already "a precondition to suing the state," *Christie v Wayne State Univ*, 511 Mich 39, 51; 993 NW2d 203 (2023)—could toll the three-year statute of limitations indefinitely, effectively rendering the limitations period nugatory. The Court of Claims therefore correctly concluded that the applicable limitations period was not tolled by MCL 600.5856(b).

## D. EQUITABLE TOLLING

Finally, Turunen argues that the statute of limitations should be equitably tolled.

Under unusual circumstances, courts have the power at equity to permit an action to go forward even though it would otherwise be time-barred. *Bryant v Oakpointe Villa Nursing Ctr*, 471 Mich 411, 432-433; 684 NW2d 864 (2004); *Ashley Ann Arbor*, 299 Mich App at 155-156. Such power may only be exercised when a party failed to comply with the applicable limitations period due to "understandable confusion about the legal nature of [its] claim, rather than a negligent failure to preserve [its] rights," *Bryant*, 471 Mich at 432, and even then, only under "those circumstances when the courts themselves have created confusion," *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 406; 738 NW2d 664 (2007). For instance, equitable tolling may be invoked when a party files an action in an improper forum on the basis of a combination of convoluted caselaw and incorrect advice by the defendant itself. *Ashley Ann Arbor*, 299 Mich App at 155-156. Equitable tolling might also be available due to confusion created by the Legislature if "there were two ostensibly valid statutes" providing that jurisdiction existed in different forums

---

[9] Although published decisions of this Court issued before November 1, 1990, are not strictly binding on this Court, all published decisions of this Court are precedential under the rule of stare decisis and generally should be followed. See *Davis v Wayne Co Election Comm*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 368615 and 368628); slip op at 12 n 11.

and courts had not yet resolved which statute trumped the other. *Wells Fargo Rail Corp v Dep't of Treasury*, 344 Mich App 351, 374-375; ___ NW3d ___ (2022).

Turunen contends that he failed to pursue his claim for money damages in the Court of Claims in 2011 or 2012 because he believed doing so was premature, he was primarily concerned about preventing the destruction of his lifestyle and livelihood in the first place, and the law surrounding the Court of Claims' jurisdiction to grant injunctive relief was "in flux." Before 2003, it was well established that the Court of Claims had jurisdiction to issue injunctive and declaratory relief when accompanied by a claim for money damages. See *Silverman v Univ of Mich Bd of Regents*, 445 Mich 209, 217; 516 NW2d 54 (1994) ("A complaint seeking only money damages against the state must be filed in the Court of Claims. A complaint seeking only equitable or declaratory relief must be filed in circuit court. A complaint seeking money damages from the state as well as equitable or declaratory relief against the state may only be filed in the Court of Claims, because that is the sole forum that is capable of deciding the whole case.") In 2003, our Supreme Court held that the Court of Claims has exclusive jurisdiction over claims seeking only declaratory or equitable relief against a state agency, even without a claim for money damages, where the claim is based on contract or tort. *Parkwood Ltd Dividend Housing Ass'n v State Housing Dev Auth*, 468 Mich 763, 773-775; 664 NW2d 185 (2003). Therefore, by 2011, when Turunen filed his first NOI in the Court of Claims, it was clear that the Court of Claims had exclusive jurisdiction over inverse condemnation actions. *Gleason*, 256 Mich App at 2. Any confusion that may have existed regarding the jurisdiction of the Court of Claims was, at least in relevant part, resolved by the time Turunen filed his 2011 NOI.

Turunen claims that the caselaw was nevertheless confusing on the basis of Justice YOUNG's concurrence in *Parkwood*, in which Justice YOUNG opined that the jurisdictional statutes in the Court of Claims Act were ambiguous and poorly drafted. *Parkwood*, 468 Mich at 775-776 (YOUNG, J., concurring). Turunen contends that the poor drafting was not remedied until the Legislature passed 2013 PA 164. First, no matter how persuasive a concurrence may be, "[c]oncurring opinions are not binding." *Henderson v Dep't of Health & Human Servs*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359840); slip op at 5. Second, even presuming that the Court of Claims Act was poorly written, confusion created by the Legislature is only a basis for invoking equitable tolling if the courts have not yet resolved that confusion. See *Wells Fargo Rail Corp*, 344 Mich App at 374. Again, even if the relevant statutes were challenging to understand on their own, *Parkwood* resolved any such confusion in 2003. The Court of Claims properly declined to invoke equitable tolling.

Because we conclude that Turunen's claims accrued more than three years before he filed his complaint, and there is no basis for tolling the applicable limitations period, the Court of Claims correctly granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(7).[10]

We affirm.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Kristina Robinson Garrett

---

[10] In light of our conclusion, we need not address defendants' alternative grounds for affirmance.