RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0083p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BEAVER STREET INVESTMENTS, LLC,

          *Plaintiff-Appellant*,

    *v.*

SUMMIT COUNTY, OHIO,

          *Defendant-Appellee*.

⎫
⎬ No. 22-3600
⎭

Appeal from the United States District Court for the Northern District of Ohio at Akron.
No. 5:22-cv-00006—Benita Y. Pearson, District Judge.

Argued:  March 15, 2023

Decided and Filed:  April 21, 2023

Before:  CLAY, McKEAGUE, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Warner D. Mendenhall, MENDENHALL LAW GROUP, Akron, Ohio, for Appellant.  Stephen W. Funk, ROETZEL & ANDRESS, LPA, Akron, Ohio, for Appellee. **ON BRIEF:**  Warner D. Mendenhall, John Pfleiderer, MENDENHALL LAW GROUP, Akron, Ohio, for Appellant.  Stephen W. Funk, Grant McLeod, ROETZEL & ANDRESS, LPA, Akron, Ohio, for Appellee.

    CLAY, J., delivered the opinion of the court in which STRANCH, J., joined. McKEAGUE, J. (pp. 9–11), delivered a separate dissenting opinion.

_____

**OPINION**

_____

CLAY, Circuit Judge.  Plaintiff Beaver Street Investments, LLC ("BSI") commenced this action under 42 U.S.C. § 1983, alleging that Defendant Summit County, Ohio ("County") violated the Fifth Amendment's Takings Clause.  The district court granted the County's motion to dismiss, holding that BSI's complaint was barred by the statute of limitations.  We **REVERSE** and **REMAND** for the reasons set forth below.

## I.  BACKGROUND

The facts of this case are undisputed.  On November 1, 2017, the County Fiscal Officer initiated an administrative tax foreclosure action against BSI before the County Board of Revision ("BOR").  Those proceedings concerned unpaid taxes on parcels of land that BSI owned.  *See Scalise v. Beaver Street Investments*, *LLC*, Case No. CV-2017-11-4588.  The County initiated the foreclosure action under Ohio Revised Code §§ 323.65 through 323.79.  Through that action, the County opted for the alternative right of redemption, which allowed BSI to pay the taxes it allegedly owed before the County took title to BSI's property.

The BOR issued its final adjudication of foreclosure on June 3, 2019.  Because the County had opted for the alternative right of redemption, BSI had 28 days to pay the taxes it owed before the County took title to the property.  Later that month, on June 27, 2019, BSI filed a Petition for Chapter 11 bankruptcy.  That petition automatically stayed the implementation of the BOR's final judgment and the 28-day redemption period.

The County filed a motion for relief from the stay, which the bankruptcy court granted on January 17, 2020.  Then, the BOR issued an order finding that the statutory period of redemption had expired as of January 21, 2020.  BSI never made the necessary redemption payments.

On January 30, 2020, rather than sell the property, the County transferred it to its land bank pursuant to Ohio Rev. Code § 323.78.**[1]** When an Ohio county sells a foreclosed property at auction, it may not keep proceeds beyond what the former owner owed on the taxes. Ohio Rev. Code § 5721.20. However, if the county transfers the foreclosed property to the county's land bank, "the land becomes 'free and clear of all impositions and any other liens on the property, which shall be deemed forever satisfied and discharged.'" *Harrison v. Montgomery Cnty., Ohio*, 997 F.3d 643, 646 (6th Cir. 2021) (quoting Ohio Rev. Code § 323.78(B)).

On January 3, 2022, BSI commenced this action under 42 U.S.C. § 1983. Through its complaint, BSI alleged that "[t]here was significant difference between the appraised value of the BSI Property and the total amount" that the County alleged BSI owed. Compl., R. 1, Page ID #6. Accordingly, BSI asserted that the County's action violated the Fifth Amendment's Takings Clause. The County responded by filing a motion to dismiss, arguing that BSI's claim was barred by the applicable statute of limitations.

The parties agreed that the statute of limitations was two years. *See Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). They disputed, however, when the two-year statute of limitations began to run. The County argued that the case became ripe for adjudication and that the statute of limitations began to run on June 3, 2019, the day that it issued its final adjudication of foreclosure. BSI, by contrast, contended that the statute of limitations did not begin to run until the statutory redemption period ended on January 21, 2020. In the County's view, the statute of limitations expired on June 3, 2021, and BSI's January 3, 2022 complaint was untimely. In BSI's view, the statute of limitations did not expire until January 21, 2022, and its complaint was timely.

The district court adopted the County's argument, determining that "the instant case became ripe when the taking occurred on the final adjudication on June 3, 2019," and that the "adjudication was final because the BOR's adjudication clearly ordered that the County would not sell the land but to transfer the land to the land bank." Mem. Op. and Order, R. 21, Page ID #242.

---

**[1]**At oral argument, the parties indicated that the January 30, 2020, order to transfer the property was purely ministerial.

The district court then considered the relevance of BSI's bankruptcy filing.  The court held that:

> although the Bankruptcy Court temporarily stayed execution of the adjudication of the BOR, the stay does not save Plaintiff's claim.  Even under a tolled statute of limitations, Plaintiff's case would still have been filed outside of the statute of limitations.  Under 11 U.S.C. § 108(a), Plaintiff was required to have filed this action by the end of the "regular" statute of limitations or two years after the filing of the bankruptcy petition.  Two years after the filing of the bankruptcy petition was June 27, 2021.  Plaintiff filed this case on January 3, 2022, so Plaintiff missed that cutoff as well.

*Id.* at 243.

Accordingly, the district court dismissed the case, holding that the two-year statute of limitations expired on June 3, 2021.  Because the district court dismissed on statute of limitations grounds, it declined to address the merits of BSI's takings claim.  BSI's timely appeal followed.

## II.  DISCUSSION

### A.  Standard of Review

"This Court reviews de novo the grant of a motion to dismiss pursuant to Rule 12(b)(6) . . . ."  *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 785 (6th Cir. 2016) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)).  On appeal, the "Court 'construe[s] the complaint in the light most favorable to the plaintiff and accept[s] all factual allegations as true.'"  *Id.* (alterations in original) (quoting *Laborers' Loc. 265 Pension Fund v. iShares Tr.*, 769 F.3d 399, 403 (6th Cir. 2014)).  "The district court's determination that a complaint was barred by the statute of limitations is a conclusion of law that this Court reviews de novo."  *Id.* at 786 (citing *Kelly v. Burks*, 415 F.3d 558, 560 (6th Cir. 2005)).

### B.  Analysis

The statute of limitations for § 1983 claims is the relevant state's statute of limitations for personal-injury torts.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  In Ohio, "a two-year statute of limitations applies to § 1983 claims . . . ."  *Cooey*, 479 F.3d at 416.  Although the statute of

limitations is determined by state law, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388.

The "standard rule" is that the statute of limitations for § 1983 claims begins to run when a "plaintiff has a complete and present cause of action . . . ." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). A complete cause of action arises "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). To determine when a statute of limitations begins to toll in a § 1983 action, therefore, this Court looks "to what event should have alerted the typical lay person to protect his or her rights." *Id.* (quotation and citation omitted).

With respect to takings claims, "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019). The Supreme Court has "explained that 'the act of taking' is the 'event which gives rise to the claim for compensation.'" *Id.* at 2170 (quoting *United States v. Dow*, 357 U.S. 17, 22 (1957)).

The dispositive issue in this appeal is what constituted the "act of taking." *See id.* In other words, the Court must determine when, as a matter of law, the County took BSI's property without paying for it. *See id.* The County argues that the taking occurred when it made a final decision regarding BSI's property, which it asserts was the final adjudication of foreclosure. BSI argues, by contrast, that the County took its property on the date the County transferred the property to the land bank. This appears to be a matter of first impression.

The district court found the County's argument persuasive, holding "that the instant case became ripe when the taking occurred on the final adjudication on June 3, 2019." Mem. Op. and Order, R. 21, Page ID #242. To support its holding, the district court relied upon this Court's holding in *Harrison*. In *Harrison*, this Court held that a taking occurred when "it became clear the State would seize [the plaintiff's property] by transferring title—a decision reached only

when the Board adjudicated the foreclosure . . . ."  997 F.3d at 651.  As is relevant here, the Court held that for a taking to occur:

> there must be a "final decision" to take property, [*Knick*, 139 S. Ct.] at 2169, meaning that it is "known to a reasonable degree of certainty" what will happen to the property, *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001).  The upshot?  A property owner today may bring a § 1983 federal takings claim in federal court "as soon as their property has been taken."  *Knick*, 139 S. Ct. at 2170.

*Id.* at 649.  Thus, the Court observed that "the property owner could file a § 1983 action in federal court under the Takings Clause *after* the Board transferred the property to a land bank." *Id.* (emphasis added).

However, the Court in *Harrison* did not address whether a taking occurs on the date of a final adjudication of foreclosure or at the expiration of the statutory redemption period; indeed, that question was not before the Court.  More to the point, the Court in *Harrison* did not address the statute of limitations at all.  Instead, it addressed ripeness.  *Id.* at 650.  *Harrison* is still relevant, however, because it provides the general principle that for a taking to occur, "there must be a 'final decision' to take property, . . . meaning that it is 'known to a reasonable degree of certainty' what will happen to the property . . . ."  *Id.* at 649 (quoting *Palazzolo*, 533 U.S. at 620).  The *Harrison* Court did not rule on when exactly that final decision takes place.[2]

We hold that the statute of limitations in this case began to run when the redemption period ended on January 21, 2020.  First, the County could not have made a "'final decision' to take the property," *Harrison*, 997 F.3d at 649 (quoting *Knick*, 139 S. Ct. at 2169), until the redemption period concluded.  After all, if BSI paid its delinquent taxes during the redemption

---

[2]The dissent seems to argue that the *Harrison* Court held that the statute of limitations begins to run *in all cases* implicating Ohio Rev. Code § 323.78 "when the Board adjudicate[s] the foreclosure . . . ."  *Harrison*, 997 F.3d at 650**.**  That argument is not persuasive.  First, as mentioned above, *Harrison* concerns ripeness, not the statute of limitations.  To determine when the statute of limitations begins to run, the Court must determine "what event should have alerted the typical lay person to protect his or her rights."  *Kuhnle Bros.*, 103 F.3d at 520 (quotation and citation omitted).  Second, the question of whether the statute of limitations begins to run when the redemption period expires was not before the Court in *Harrison*.  Indeed, the Court in *Harrison* only mentioned the redemption period once, in the statement of facts, and does not consider the redemption period at all in its analysis.  *Harrison*, 997 F.3d at 647.  Third, and more importantly, even if we were to conflate ripeness with the statute of limitations, the Court in *Harrison* explicitly stated that "the property owner could file a § 1983 action in federal court under the Takings Clause *after* the Board transferred the property to a land bank," *id.* at 649 (emphasis added), which the BOR could not do in the instant case until after the redemption period expired.

period, the County would have been *prohibited* from taking the property.  Ohio Rev. Code § 323.65.  Second, it did not become "clear the [County] would seize [the plaintiff's property] by transferring title," *Harrison*, 997 F.3d at 651, until after the redemption period ended.  The County was *prohibited* from transferring title until after the redemption period ended; until that time, whether the County would transfer title was unclear.  Third, until the redemption period ended, the County had not taken BSI's "property without paying for it."  *Knick*, 139 S. Ct. at 2167.  Fourth, so long as BSI still had the opportunity to retain title to its property, there was no "event which gives rise to the claim for compensation."  *Id.* at 2170 (quoting *Dow*, 357 U.S. at 22).

The dissent focuses too narrowly on the Court's language in *Harrison* that, in *that case*, "[t]he taking . . . happened when the Board adjudicated the foreclosure of Harrison's property through the land bank process, not before."  *Harrison*, 997 F.3d at 650.  In doing so, the dissent ignores that in *this case*, no "'final decision' to take property," *id.* (quoting *Knick*, 139 S. Ct. at 2169), was made until the redemption period concluded.  Equally important, the dissent also neglects to consider that the *Harrison* Court explicitly stated that "the property owner could file a § 1983 action in federal court under the Takings Clause *after* the Board transferred the property to a land bank."  *Id.* at 649 (emphasis added).  Therefore, *Harrison* supports our holding that in this case, the statute of limitations could not have begun to run until the redemption period expired.

The County also contends that BSI's bankruptcy petition only stayed the redemption period for 60 days.[3]  Thus, the County contends, the above analysis is for naught because BSI's bankruptcy petition only stayed the redemption period until August 26, 2019, meaning that the statute of limitations expired at the latest on August 26, 2021.  According to that argument, BSI's claim is barred by the statute of limitations no matter what.

---

[3]The County supports that contention by arguing that "the tolling of a statutory redemption period is governed by Section 108(b) of the Bankruptcy Code, which grants the trustee (or the debtor, in this case) with an additional 60 days after the filing of the petition to exercise the statutory right of redemption."  Appellee's Br. at 12 (quotation omitted).

The County's argument is unpersuasive. As mentioned above, the BOR itself determined that the redemption period ended on January 21, 2020. The County provides no authority suggesting that its own determination is reviewable in this appeal. Moreover, the County provides no reason to doubt that if BSI paid the money it owed on the property by January 21, 2020—the date the County said that the redemption period ended—it would have been allowed to keep its property. Finally, the County does not explain how, before January 21, 2020, a "typical lay person" could have known "to protect his or her rights," *Kuhnle Bros.*, 103 F.3d at 520 (quotation quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991), until the redemption period ended and the County officially seized the property without compensation.

Accordingly, we will reverse the district court's dismissal of BSI's complaint and remand for further proceedings.

**CONCLUSION**

For the reasons stated above, we **REVERSE** the district court's dismissal of BSI's complaint and **REMAND** for further proceedings consistent with this opinion.

———————————

**DISSENT**

———————————

McKEAGUE, Circuit Judge, dissenting.  The majority holds that the statute of limitations for Beaver Street Investments' takings claim did not begin to run until after the statutory redemption period ended.  I disagree.  Instead, I would hold that the limitations period began when the Board of Revision issued its final adjudication of foreclosure.  The Court seeing it differently, I respectfully dissent.

Typically, when an Ohio county forecloses on tax-delinquent property, it sells the property at auction and turns over any excess funds to the original property owner.  *See* O.R.C. § 323.73.  But under Ohio Revised Code §§ 323.65 through 323.79, Ohio counties are permitted to take an alternative approach: they can instead transfer abandoned property to authorized county land banks.  Under this procedure, no auction takes place and the original property owner loses any right to surplus equity they would have otherwise retained.  *Id.* § 323.78(B).

And that's what happened here.  In 2017, Summit County, Ohio filed a foreclosure action in its Board of Revision against two parcels of abandoned land owned by Beaver Street Investments, LLC.  Rather than sell the property at auction, the County opted to transfer the land to its land bank pursuant to O.R.C. § 323.78.  On June 3, 2019, the BOR issued its final adjudication of foreclosure to that effect, and any interest BSI possessed in the property's surplus equity vanished.

To be sure, the applicable provisions afforded BSI a twenty-eight-day right of redemption, during which time BSI could pay outstanding taxes to redeem its property.  *See* O.R.C. § 323.65(J).  But the majority places too much emphasis on this redemption period and too little emphasis on the actual takings claim at issue in this case.

In its complaint, BSI alleged that "[p]roperty owners, such as Plaintiffs, receive less than the fair market value for their properties when transferred under O.R.C. § 323.78(B)."  R. 1, PID 5.  Specifically, BSI alleged the following:

> When the BSI Property was directly transferred under O.R.C. § 323.78, the value of the BSI Property exceeded the taxes owed on the property.

> When the BSI Property was directly transferred under O.R.C. § 323.78, BSI received no compensation.

> Under the direct transfer mechanism of O.R.C. § 323.78, the County, acting under color of law, took BSI's real property without just compensation.

> As a direct and proximate result of the County's actions, BSI has been damaged in the amount by which the value of the property so transferred exceeded the total impositions attributable to that property.

*Id.* at PID 8.

Plainly, the injury asserted by BSI is the transfer of its property under O.R.C. § 323.78, whereby its surplus equity interest was extinguished without compensation. Had the County sold BSI's property at auction, BSI would have been entitled to excess proceeds, *see* O.R.C. § 5721.20, but because the County transferred BSI's property to its land bank, BSI was entitled to nothing, *see id.* § 323.78(B). And *that* is the taking.

Limitations periods generally start to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)). In determining when a § 1983 cause of action accrues, this Court looks "to what event should have alerted the typical lay person to protect his or her rights." *Id.* at 520 (quoting *Dixon v. Anderson*, 928 F.3d 212, 215 (6th Cir. 1991)). Here, the injury forming the basis of BSI's action was the County's decision to direct the transfer of BSI's property to the County's land bank. Thus, the key event alerting BSI to protect its rights was the BOR's final adjudication of foreclosure on June 3, 2019, which ordered that direct transfer. At that time, BSI knew or had reason to know that the County would transfer its property in lieu of sale.

The BOR's final adjudication of foreclosure also constituted a "final decision"—a standard the majority largely ignores. In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, the Supreme Court held that there must be a "final decision" to take property before a takings claim becomes ripe for adjudication. 473 U.S. 172, 186 (1985). And in *Harrison v. Montgomery County, Ohio*, 997 F.3d 643 (6th Cir. 2021), this Court applied

the final decision requirement to the very same type of takings claim that is at issue in this case. There, a property owner brought an identical § 1983 takings claim when the Montgomery County Board of Revision transferred her property to the county's land bank without providing compensation for the property's value in excess of its tax liabilities. *Id.* at 647. This Court held that "her federal takings claim was not ripe until the Board's *final decision* to transfer the property to the land bank[,]" and that, "[u]ntil it became clear the State would seize Harrison's surplus equity by transferring title—a decision reached *only when the Board adjudicated the foreclosure*—no taking occurred." *Harrison*, 997 F.3d at 650–51 (emphasis added). And in determining when the county formally "took" Harrison's property, this Court stated, in no uncertain terms: "The taking, so far as federal law is concerned, happened *when the Board adjudicated the foreclosure* of Harrison's property through the land bank process." *Id.* at 650 (emphasis added).

Yet, despite this controlling caselaw, the majority concludes that the County could not have made a "final decision" to take BSI's property, and that it was not clear the County would seize BSI's property by transferring title, until the redemption period ended. I cannot agree. Here, as in *Harrison*, the BOR's final adjudication of foreclosure constituted a "final decision." *Harrison*, 997 F.3d at 650. When the BOR issued this final adjudication, "it became clear the [County] would seize [BSI]'s surplus equity by transferring title," and a "taking occurred." *See id.* at 651. Furthermore, at that point, nothing more was required of the BOR. In fact, counsel for BSI acknowledged at oral argument that additional action taken by the Board to implement the transfer was purely "ministerial." Oral Arg. 8:15–8:31 ("Now, there is a final ministerial action that has to happen after that redemption period runs. . . . That final ministerial action is the Board of Revision must provide an order to the clerk to get the Sheriff to transfer that property.").

Because I believe the statute of limitations accrued when the Board issued its final adjudication of foreclosure on June 3, 2019, and because BSI failed to file its takings claim within two years of that date, I would affirm the district court's dismissal, and I respectfully dissent.