23-1171-cv
*Sikorsky v. City of Newburgh*

# United States Court of Appeals For the Second Circuit

August Term 2024
Argued: February 4, 2025
Decided: May 2, 2025

No. 23-1171-cv

KENNETH MICHAEL SIKORSKY, LTC, USA,

*Plaintiff-Appellant*,

*v.*

CITY OF NEWBURGH, NEW YORK, CITY OF NEWBURGH, NY CORPORATE
COUNSEL, JEREMY KAUFMAN, CITY OF NEWBURGH, NY CORPORATE
COUNSEL, ORANGE COUNTY, NEW YORK, REAL PROPERTY,
*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of New York
No. 7:22-cv-2387, Philip M. Halpern, *Judge*.

Before:      Livingston, *Chief Judge*, Walker, and Nathan, *Circuit*

*Judge*s.

Plaintiff-Appellant Kenneth Michael Sikorsky appeals from a judgment of the United States District Court for the Southern District of New York (Halpern, *J.*) dismissing his *pro se* complaint against the City of Newburgh, Jeremy Kaufman (assistant corporation counsel to the City), Orange County, and Orange County "Real Property."  On appeal, Sikorsky, counseled, argues that he stated a claim against the City and Kaufman for a constitutional taking and that he also has a right to recover under New York state laws enacted while this appeal was pending.   We conclude that Sikorsky stated a claim for a constitutional taking against the City and Kaufman.

VACATED in part and REMANDED.

————

CHARLES DEWEY COLE, JR., Newman Myers Kreines Harris, P.C., New York, NY, *for Plaintiff-Appellant*.

PAUL E. SVENSSON, Hodges Walsh & Burke LLP, White Plains, NY, *for the City of Newburgh and Jeremy Kaufman*.

MATTHEW J. NOTHNAGLE, Orange County Attorney's Office, Goshen, NY, *for Orange County and Orange County "Real Property."*

————

NATHAN, *Circuit Judge*:

Plaintiff-Appellant Kenneth Michael Sikorsky bought a house in 2006. He failed to pay his taxes, and so the City of Newburgh foreclosed on that house. Sikorsky and the City contracted for Sikorsky to buy the house back, but the sale fell through. Sikorsky's complaint alleges that the City has since sold the house for about $250,000 more than what he owed in taxes but refuses to give him the surplus. The District Court dismissed Sikorsky's complaint for failing to state a claim. Sikorsky argued below and now presses on appeal that he has stated a claim under the Takings Clause in the Fifth Amendment to the United States Constitution. We agree. For the reasons that follow, the judgment of the District Court is VACATED in part, and the case is REMANDED for further proceedings consistent with this opinion.

## BACKGROUND

In 2006, Kenneth Michael Sikorsky purchased a property at 22 Bay View Terrace, Newburgh, New York for $370,000. Six years later, after falling behind on his property taxes, the City of Newburgh initiated foreclosure proceedings and took ownership of the property by deed pursuant to a default judgment in October 2012. *Sikorsky v. City of Newburgh*, 136 N.Y.S.3d 362, 364 (2d Dep't 2020).

Soon afterwards, in March 2013, Sikorsky sent the City a letter, which proposed a deal where Sikorsky would buy the property back for around $60,000. After over a year of back and forth, the parties settled on a contract through which Sikorsky would be able to buy the property back for "the total of the delinquent taxes owing on the

3

property in the amount of $92,786.24." Supp. App'x at 84. There would be a down payment of $14,882.96 to be followed by eight installments of $10,406.69 due every three months, until June 30, 2016. *Id.* However, if Sikorsky failed "to pay the balance of the purchase price" before July 31, 2016, the down payment would be "forfeited to the City as liquidated damages," and the City would then be able to, but "not obligated to, offer the parcel to another purchaser." *Id.* at 86.

By January of 2017, Sikorsky was more than six months behind on his installment payments, and Jeremy Kaufman, the assistant corporation counsel for the City, sent Sikorsky an ultimatum. If Sikorsky failed to close on "Friday, February 10 at 12:00 p.m. at Newburgh City Hall, 83 Broadway, Newburgh, New York 12550, *TIME BEING OF THE ESSENCE*," the City would "avail itself of any and all remedies afforded to it under the" repurchase agreement. Supp. App'x at 96. Sikorsky no-showed, and Kaufman notified him of the City's cancellation of the sale. Sikorsky attempted to reinstate the sale, but the City refused to negotiate any further.

Out of options, Sikorsky sued the City in New York state court. He alleged, *inter alia*, disability discrimination, that the repurchase agreement's liquidated damages provision was unconscionable, and that the City had violated New York Military Law § 314. The state trial court dismissed all of his claims, and, in 2020, the state appellate court affirmed. *See Sikorsky*, 136 N.Y.S.3d at 364. In March of 2021, Sikorsky again sued the City in state court for damages related to the cancelation of the repurchase agreement. The state trial court dismissed his suit as claim precluded. Sikorsky alleges that in June 2021, the City finally sold the property to a third party for $350,500.

4

The instant litigation began in March of 2022, when Sikorsky, *pro se*, filed the federal complaint at issue in this appeal, which we liberally construe to name the City of Newburgh, Jeremy Kaufman, Orange County, and Orange County's Office of Real Property Tax Services as defendants. Sikorsky alleges that these defendants "have seized the significant unexpended sum of equity surplus money which has been realized from the Plaintiff's Property tax-foreclosure sale. The Plaintiff, has received zero equity *s*urplus-refund, nor received any notice of refund; to date." App'x at 19. Sikorsky principally asserts that the defendants violated the Servicemembers Civil Relief Act, 50 U.S.C. §§ 3931 *et seq.* and the Takings Clause of the Fifth Amendment to the United States Constitution. On November 14, 2022, the defendants jointly moved to dismiss the case.

While the joint motion to dismiss was pending before the District Court, the Supreme Court handed down *Tyler v. Hennepin County*, 598 U.S. 631 (2023). There, the Court held that the Fifth Amendment's Takings Clause, as applicable to the States via the Fourteenth Amendment, prohibits municipalities from using "the toehold of [a] tax debt to confiscate more property than was due." *Id.* at 639. And thus, where local law "provides no opportunity for the taxpayer to recover" sale proceeds in excess of the tax debt owed, a plaintiff may bring a claim for a constitutional taking against the municipality. *Id.* at 644.

Two months after *Tyler* was decided—and seemingly without reference to it—the District Court granted the defendants' motion to dismiss. Sikorsky, *pro se*, timely appealed from the judgment. While Sikorsky's appeal was pending, and in response to *Tyler*, New York

5

enacted laws that provide procedures for certain claimants to recoup surplus equity from foreclosure sales. N.Y. Real Prop. Tax Law § 1197(1); 2024 N.Y. Sess. Laws ch. 55, pt. BB § 19(1)(a), (c).

We assigned Sikorsky appellate counsel and heard oral argument.[1] For the reasons stated below, we VACATE the dismissal of Sikorsky's claims for a constitutional taking against the City of Newburgh and Jeremy Kaufman and otherwise AFFIRM the judgment of the District Court.

## DISCUSSION

On appeal, Sikorsky has abandoned all but two claims: (1) a constitutional taking against the City and Kaufman, and (2) claims under New York Real Property Tax Law § 1197(1) for the recovery of surplus equity following a foreclosure sale. We hold that Sikorsky lacks a remedy under New York law and that he has stated a claim for a constitutional taking.

## I. Constitutional Taking

"The Takings Clause, applicable to the States through the Fourteenth Amendment, provides that 'private property [shall not] be taken for public use, without just compensation.'" *Tyler*, 598 U.S. at 637 (quoting U.S. Const. amend. V). The Supreme Court has remained steadfast in the holding that property taxes, interest, and late fees "are not themselves a taking," *id.*, and that the State "may also seize and sell property, including land, to recover the amount

---

[1] Plaintiffs asserting claims similar to Sikorsky's in various actions pending in the District Courts of New York also filed a motion for leave to file a brief as *amici curiae*, ECF No. 132, which we now grant.

owed," *id.* at 638. The novel question *Tyler* addressed was whether, when there is "money remaining after" a home is "seized and sold by [a municipality] to satisfy . . . past due taxes," the "remaining value is property under the Takings Clause, protected from uncompensated appropriation by the State." *Id.* at 638. The Supreme Court unanimously answered in the affirmative, holding that the "taxpayer must render unto Caesar what is Caesar's, but no more." *Id.* at 647. When local law "provides no opportunity for the taxpayer to recover the excess value," a plaintiff has a claim for a constitutional taking. *Id.* at 644.

Sikorsky alleges that the City sold 22 Bay View Terrace for $350,500 to a third party despite having only a $92,786.24 bill to satisfy. He also alleges that the City never gave him that almost $258,000 difference. If New York state or the City of Newburgh provide Sikorsky with no procedure to get that money back, the Constitution supplies a remedy.

Before this Court—though not before the District Court, as the relevant laws were passed while this appeal was pending—Sikorsky argues that he has a claim under New York law for the surplus equity *in addition to* a claim under the Takings Clause. As a preliminary matter, we disagree that one may be entitled to relief both under the Takings Clause and local law. *Tyler* made clear that if local law provides valid procedures by which one "'might receive the surplus'" and owners do "not take advantage of this procedure," they have "forfeited their right to the surplus." *Tyler*, 598 U.S. at 644 (quoting *Nelson v. City of New York*, 352 U.S. 103, 110 (1956)). In other words, unless local law "absolutely precludes an owner from obtaining the

7

surplus proceeds of a judicial sale," *Nelson*, 352 U.S. at 110, there is "no Takings Clause violation." *Tyler*, 598 U.S. at 644. Therefore, if it were true that New York law provides Sikorsky with a valid procedure to recover the surplus, Sikorsky would not have a claim for a constitutional taking.

Nevertheless, we conclude that the new New York laws do not give Sikorsky a remedy. The laws provide an unconditional claim for surplus equity only for those whose properties were "sold on or after May 25, 2023" (the decision date of *Tyler*). 2024 N.Y. Sess. Laws ch. 55, pt. BB § 19(1)(a). And, for properties sold "prior to May 25, 2023, a claim for surplus attributable to such sale may be maintained if and only if a proceeding to compel such tax district to distribute such surplus to the petitioner . . . had been initiated pursuant to [N.Y. CPLR § 7803(1)] . . . , and such proceeding was still active on the effective date of this act." *Id.* § 19(1)(c). Chapter 55 was approved on April 20, 2024, 2024 N.Y. Sess. Laws ch. 55, and Part BB § 19 is "deemed to have been in full force and effect on and after May 25, 2023," *id.* pt. BB § 19.

Sikorsky alleges the property was sold in June 2021 and therefore would only have a remedy under New York Real Property Tax Law § 1197 if he had an "active" proceeding "pursuant to" N.Y. CPLR § 7803(1) on the effective date of the act, May 25, 2023. Article 78 proceedings are creatures of New York state law and are required to "be brought in the supreme court in" specified counties. N.Y. CPLR § 7804(b). Sikorsky admits that he "did not bring a special proceeding in state court to recover the surplus retained by the City."

8

Appellant's Supp. Br. at 15.[2]

Because his property was sold prior to May 25, 2023, and he never brought an Article 78 in state court, the New York law affords Sikorsky no remedy. No party has pointed this Court to any local law that would. Because Sikorsky lacks a local remedy, the Constitution fills the gap.

Accordingly, pursuant to *Tyler*, Sikorsky has stated a claim for a constitutional taking.

## II.       The City's Defenses

The City counters with four defenses: (1) that the repurchase agreement "vacated the foreclosure and redefined the obligations of the parties," City Br. at 4 (alterations omitted); (2) that the takings claim is claim precluded; (3) that the takings claim is barred by a statute of limitations; and (4) that we lack subject matter jurisdiction over this claim due to the Tax Injunction Act, 28 U.S.C. § 1341, and principles of comity. We reject these arguments.

Beginning with the repurchase agreement, we cannot agree with the City that it "vacated" the foreclosure. The City argues that after the agreement, "the conduct of the parties was no longer governed by the foreclosure judgment but, instead, was governed by the terms of the Repurchase Agreement, which created new, contractual obligations on the part of both the City and the Appellant." City Br. at 4. Insofar as the repurchase agreement was a valid contract under applicable law, we agree that it created

---

[2] Sikorsky's argument that his *federal* case satisfies the Article 78 proceeding requirement, *see* Appellant's Supp. Br. at 15–16, directly contravenes the plain language of 2024 N.Y. Sess. Laws ch. 55, pt. BB § 19(1)(c) and, therefore, is unavailing.

contractual obligations. But we fail to see how the supposed *contractual* obligations at issue here could relieve the City of its *constitutional* obligation to justly compensate Sikorsky if it kept more than its fair share. If the sale had been perfected, then certainly Sikorsky would have no takings claim against the City for retaining surplus equity because the City would have "retained" nothing. But the sale did not go through, so the repurchase agreement does not change the operative facts for the purposes of applying *Tyler*: the City got title through foreclosure and then, according to Sikorsky's complaint, sold the property without giving him the surplus. And, the City's suggestion that the repurchase agreement itself provided Sikorsky with a means to "retain any surplus equity in his property" because Sikorsky had the "opportunity to negotiate the terms of purchasing the property," *see* City Supp. Br. at 2, misses the mark. The repurchase agreement, which contemplated a sale of the property *to Sikorsky*, did not provide Sikorsky with a mechanism to recover a surplus resulting from a sale to a third party. Thus, repurchase agreement or no, Sikorsky's predicament is not materially different than the facts presented in *Tyler*.

Next, the City argues that the judgments from Sikorsky's state court proceedings preclude his takings claim. "Under both New York law and federal law, the doctrine of *res judicata*, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). Thus, claim preclusion bars relitigation if

10

"(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). The state court actions all ended in adjudications on the merits and involved the same parties, but the takings claim was not and could not have been raised in those actions because it had yet to accrue.

New York courts, like federal courts, require a claim to be ripe for it to be justiciable, thereby avoiding "mere hypothetical adjudications." *Prashker v. U.S. Guar. Co.*, 1 N.Y.2d 584, 592 (1956); *see also Park Ave. Clinical Hosp. v. Kramer*, 271 N.Y.S.2d 747, 749–50 (4th Dep't 1966); *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003). The "general rule" is "that claims are ripe once a cause of action accrues." *Somoza v. N.Y. City Dep't of Educ.*, 538 F.3d 106, 115 (2d Cir. 2008). A "claim accrues when the plaintiff knows or has reason to know of the harm." *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994) (quotation marks omitted).

This Court has yet to consider when a claim for surplus equity under *Tyler* accrues. We hold that the "harm" at issue is the municipality's *retention* of surplus equity. As the *Tyler* court explained, "'[t]o withhold the surplus from the owner would be to violate the Fifth Amendment.'" *Tyler*, 598 U.S. at 643 (quoting *United States v. Lawton*, 110 U.S. 146, 150 (1884))). In this case, that harm did not occur until the City received (and began to "retain") the money from the sale of the property, which Sikorsky alleges occurred in June 2021. Sikorsky commenced his first state court action against the City

11

in 2017 and his second in March 2021.  Thus, both of Sikorsky's state court actions began *before* his claim was ripe.[3]  Claim preclusion does not bar a claim that could not have been brought in the earlier action, so it does not bar Sikorsky's claim here.

Next the City argues that the three-year statute of limitations bars Sikorsky's claim.  *See* N.Y. CPLR § 214(5); *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("Section 1983 does not provide a specific statute of limitations.  Thus, courts apply the statute of limitations for personal injury actions under state law.").  Just as a claim becomes ripe when it accrues, the statute of limitations begins to run when the claim accrues.  *See Eagleston*, 41 F.3d at 871.  Sikorsky's claim accrued in June 2021, and he filed this action in March 2022, well within three years.  The statute of limitations does not bar Sikorsky's claim.

The City's final argument is that the Tax Injunction Act and its associated principles of comity bar the federal courts from even considering Sikorsky's claim.  This argument is misplaced.  Comity bars taxpayers from bringing § 1983 suits in the federal courts that assert the invalidity of a state tax system if state court remedies are sufficient.  *Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981).  And the Tax Injunction Act declares that the "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341.  First, this Court has held that the Tax Injunction Act "does not

---

[3] We take no position on whether a claim for a *constructive* taking under *Tyler* might be ripe prior to any sale because the municipality simply retains the house without ever selling it for an unreasonable period.

deprive the federal courts of subject matter jurisdiction." *Luessenhop v. Clinton Cnty.*, 466 F.3d 259, 268 (2d Cir. 2006). And second, insofar as Sikorsky was attempting to prevent the collection of state taxes or deem the original taxes on his property invalid, he has abandoned such efforts. If forcing the City to distribute the surplus equity to Sikorsky would violate principles of comity or the Tax Injunction Act, then *Tyler* could not have been decided the way it was. We therefore hold that neither principles of comity nor the Tax Injunction Act prevent the District Court from ordering appropriate relief should Sikorsky win on the merits of his claim under the Takings Clause.

None of the City's defenses being meritorious, we conclude that Sikorsky has stated a claim for a taking under the Constitution. Accordingly, we **VACATE** the dismissal of Sikorsky's claims for a constitutional taking against the City of Newburgh and Jeremy Kaufman and otherwise **AFFIRM** the judgment of the District Court. This case is **REMANDED** to the District Court for further proceedings consistent with this opinion.