280 September 4, 2025 No. 796

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

WESTERN STATES LAND RELIANCE TRUST,
*Plaintiff-Appellant,*

*v.*

LINN COUNTY,
a political subdivision of the State of Oregon,
*Defendant-Respondent.*

Linn County Circuit Court
24CV06966; A184258

Thomas McHill, Judge.

Argued and submitted May 21, 2025.

Ross Day argued the cause for appellant. Also on the briefs was Day Law, P.C.

Thomas M. Christ argued the cause for respondent. Also on the brief was Sussman Shank LLP.

Christina M. Martin and Pacific Legal Foundation filed the brief *amicus curiae* for Pacific Legal Foundation.

Nadia H. Dahab, and Sugerman Dahab, and Julie Nepveu, Dean Graybill, Louis Lopez, William Alvarado Rivera and AARP Foundation, and John Rao, Andrea Bopp Stark, and National Consumer Law Center filed the brief *amicus curiae* for AARP, AARP Foundation, National Consumer Law Center, and Oregon Consumer Justice.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

In *Tyler v. Hennepin County*, 598 US 631, 143 S Ct 1369, 215 L Ed 2d 564 (2023), the United States Supreme Court held that a county's retention of surplus proceeds following a foreclosure sale for unpaid tax debt constituted a taking under the Takings Clause of the Fifth Amendment to the United States Constitution. Indeed, that principle—that the government cannot retain proceeds of a sale in excess of the tax debt—is deeply enmeshed in both this nation's history and English law.

Here, plaintiff is a former landowner in Linn County (the County). In 2010, after plaintiff failed to pay taxes on its property, the County foreclosed on plaintiff's property and the property was deeded to the County. Twelve years later, the County sold the foreclosed property for an amount in excess of plaintiff's tax debt and retained the entire amount of the proceeds from the sale. Plaintiff filed a complaint, claiming that—under *Tyler*—the County effected an unconstitutional taking by retaining the proceeds that exceeded its tax debt.[1] The County moved to dismiss the complaint, and the trial court granted that motion after concluding that the County did not commit an unconstitutional taking under *Tyler*.[2] Plaintiff now appeals.

As explained below, *Tyler* compels the conclusion that the County, in retaining the proceeds in excess of plaintiff's tax debt, effected an unconstitutional taking; thus, the trial court erred in ruling otherwise. We further conclude, however, that plaintiff's claim was untimely. Accordingly, we affirm.

---

[1] The Takings Clause of the Fifth Amendment is incorporated against the states under the Fourteenth Amendment to the United States Constitution. *Chicago, B. & Q. R. Co. v. City of Chicago*, 166 US 226, 241, 17 S Ct 581, 41 L Ed 979 (1897).

[2] In addition to plaintiff's section 1983 claim, plaintiff brought claims for declaratory and injunctive relief and accounting. The trial court dismissed those claims after concluding that "[i]f there is no unconstitutional taking in this case, all *** of plaintiff's [claims] fail as well." Plaintiff does not assign error to the trial court's ruling on the declaratory and injunctive relief or accounting claims, nor does it provide any argument addressing those claims. Accordingly, those claims are not before us on appeal, and we do not address them.

## I. FACTS

The relevant underlying facts are few and undisputed. Plaintiff owned real property consisting of 21 separate parcels located in Linn County, Oregon. The County had a tax lien on the parcels. In 2008, the County initiated foreclosure proceedings against plaintiff's property. Plaintiff did not file an answer or defense to the foreclosure proceedings. *See* ORS 312.070 ("Any person interested in any real property included in the foreclosure list may file an answer and defense to the application for judgment within 30 days after the date of the first publication of the foreclosure list ***."). On September 18, 2008, the County obtained a general judgment of foreclosure against plaintiff's property. According to that judgment, plaintiff owed $248,257.35 in property taxes to the County. On December 30, 2010, all 21 parcels comprising the property were deeded to the County. On February 8, 2022, the County sold three of the parcels for $800,000 and retained the full amount of those proceeds.

Two years later, plaintiff filed this section 1983 action claiming that under *Tyler*, the County's retention of the surplus proceeds—the difference between the amount the County sold the property for, and the amount of property taxes owed by plaintiff—was a taking of property without just compensation in violation of the Fifth Amendment to the United States Constitution.[3]

## II. APPLICABLE LAW

The scope and reach of *Tyler* and several cases that precede it are critical to understanding the litigation below and the trial court's ruling—and ultimately our conclusion that the court misinterpreted *Tyler*. We thus describe those cases and related principles in detail before returning to the underlying litigation and the parties' arguments on appeal.

The principle that taxpayers are entitled to surplus in excess of any debt owed has long been recognized by the United States Supreme Court. *Tyler*, 598 US at 642. In *United States v. Taylor*, 104 US 216, 26 L Ed 721 (1881), for

---

[3] In the complaint, plaintiff alleges that the amount of the surplus proceeds equals $624,553.28 or, alternatively, $551,742.65. The precise amount at issue is not relevant to the questions presented on appeal.

example, a taxpayer in Arkansas whose property had been sold to satisfy a tax debt sought to recover the surplus from the sale. Under a federal statute enacted in 1861, if a taxpayer did not pay, their property would be sold and the surplus proceeds of the sale would be paid to the owner. *Taylor*, 104 US at 217-18. In 1862, Congress passed a statute that added a 50 percent penalty in the rebelling States—which the 1862 statute termed "insurrectionary districts within the United States"—but made no mention of the owner's right to surplus after a tax sale. *Id.* at 218-19. Taylor's property had been sold under the 1862 Act, but he sought to recover the surplus under the 1861 Act. The Court held that, although the 1862 Act made "no mention of the right of the owner of the lands to receive the surplus proceeds of their sale," the taxpayer was entitled to the surplus because nothing in the 1862 Act took "from the owner the right accorded him by the Act of 1861." *Id.*

The Court extended *Taylor* in *United States v. Lawton*, 110 US 146, 3 S Ct 545, 28 L Ed 100 (1884), recognizing that the government's retention of property that has surplus value violated the Takings Clause. In that case, the taxpayer had an unpaid tax bill under the 1862 Act for $170.50. *Lawton*, 110 US at 148. The federal government seized the taxpayer's property and, instead of selling the property, kept the property for itself at a value of $1100. *Id.* The taxpayer sought to recover the excess value from the government. *Id.* The Court held that, under *Taylor*, the taxpayer was entitled to the surplus under the 1861 federal statute, just as if the government had sold the property. *Id.* at 149-50. The Court reached that conclusion after observing that although the 1861 statute did not explicitly provide the right to the surplus under such circumstances, "[t]o withhold the surplus from the owner would be to violate the [F]ifth [A]mendment to the [C]onstitution and deprive him of his property without due process of law or take his property for public use without just compensation." *Id.* at 150.

*Lawton* thus establishes the principle that the government's retention of the surplus proceeds from a tax sale or the excess value of a foreclosed property is an unconstitutional taking for which the former property owner is entitled

to just compensation. Failure to provide that compensation effects a taking under the Fifth Amendment.

Then came *Nelson v. City of New York*, 352 US 103, 77 S Ct 195, 1 L Ed 2d 171 (1956). In that case, New York City began foreclosure proceedings against two parcels of land after a tax lien went unpaid for four years. *Id.* at 105-06. Under the New York City foreclosure statutes, a property owner had seven weeks after the city filed for foreclosure to redeem the property (*i.e.* pay the back taxes and penalties), and an additional 20 days to file an answer to the city's foreclosure filing. *Id.* at 104-05 n 1. The statutes further provided that "'[e]very person having any right, title or interest in or lien upon any parcel *** may serve a duly verified answer *** setting forth in detail the nature and amount of his interest or lien and any defense or objection to the foreclosure.'" *Id.* at 110 n 10. Additionally, the statutes provided, in pertinent part, that the "'court shall have full power *** in a proper case to direct a sale of *** lands and the distribution or other disposition of the proceeds of the sale.'" *Id.* If the property owner did not pay the taxes or file an answer within the prescribed timeframe, a judgment of foreclosure would be entered, a deed would be executed conveying the property to the city, and the city could "retain the property or sell it and retain the entire proceeds." *Id.* at 104 n 1.

The property owners "took no action" within the prescribed timeframe, and judgments of foreclosure were entered by default. *Id.* at 105-06. The city sold one of the parcels and retained all of the proceeds and kept the other parcel. *Id.* at 106. The property owners claimed, among other things, that the city's "retention of property, in one instance, and proceeds of sale in the other, far exceeding in value the amounts due," was an unconstitutional taking. *Id.* at 109.

The Court, consistently with *Taylor* and *Lawton*, observed that "'withhold[ing] the surplus from the owner would be to violate the fifth amendment to the constitution and deprive [them] of [their] property without due process of law or to take [their] property for public use without just compensation.'" *Id.* at 109-10 (quoting *Lawton*, 110 US at 150). But unlike those cases, because New York City's ordinance

did not "absolutely preclud[e] an owner from obtaining the surplus proceeds of a judicial sale," but instead permitted the owner to recover the surplus through a specific procedure, there was no Takings Clause violation where the property owner did not take advantage of that procedure. *Id.* at 110. In reaching that conclusion, the Court cited a case in which a New York state court had construed the foreclosure statutes to mean that, where a property owner filed a timely answer asserting that his property had a value substantially exceeding the tax due, upon proof of that assertion "a separate sale should be directed so that the owner might receive the surplus." *Id.*

More than 50 years after its decision in *Nelson*, the Court addressed Minnesota's foreclosure scheme in *Tyler*. In that case, the county sold Tyler's home for $40,000 to satisfy a $15,000 tax bill and retained the remaining $25,000. *Tyler*, 598 US at 634. The Court held that, because Minnesota's foreclosure scheme "provides no opportunity for the taxpayer to recover the excess value" of the property, the county's retention of the surplus proceeds was an unconstitutional taking. *Id.* at 639, 644.

Under that statutory scheme, a taxpayer has one year to pay taxes on real property before the taxes become delinquent. *Id.* at 635. If they do not timely pay, the tax debt accrues interest and penalties and the county obtains a judgment against the property, transferring limited title to the state.[4] *Id.* The delinquent taxpayer then has three years to redeem the property and regain title by paying all taxes and late fees. *Id.* If at the end of three years the taxes and fees have not been paid, absolute title vests in the state and the tax debt is extinguished. *Id.* The state may keep the property or sell it. *Id.* If the state sells the property, Minn Stat § 282.08 provides that any proceeds in excess of the tax debt "must" remain with the county, to be apportioned between the county, the town, and the school district. *Id.*

---

[4] Under Minnesota's statutes, the county must provide notice to delinquent property owners through publication and mail, and a property owner may file an answer setting forth a defense or objection to the tax or penalty within 20 days after the last publication of the notice. Minn Stat § 279.05 to 279.15. However, as described in the text, that procedure, unlike the New York procedure, did not provide an opportunity to obtain the surplus.

The court concluded that under "[h]istory and precedent," by retaining the proceeds that exceeded the plaintiff's tax debt, the County effected a "classic taking in which the government directly appropriates private property for its own use." *Id.* at 639 (internal quotation marks omitted). The Court observed that the principle that a government "may not take more from a taxpayer than she owes can trace its origins at least as far back as" 1215 and the Magna Carta. *Id.* The Court further observed that *Taylor* and *Lawton* recognized that foundational principle, *i.e.*, that a taxpayer is entitled to the surplus in excess of the debt owed. *Id.* at 642-43.

And, because Minn Stat § 282.08 precluded a former owner from recovering the surplus, the Court concluded that *Nelson*, which Hennepin County relied on in arguing that its retention of the surplus proceeds was not an unconstitutional taking, was "readily distinguished." *Id.* at 643-44. The Court noted that New York's statutes "permitted the owner to recover the surplus but required that the owner have filed a timely answer in [the] foreclosure proceeding, asserting his property had a value substantially exceeding the tax due." *Id.* at 644 (internal quotation marks omitted). And because the owner did not take advantage of that procedure, they "forfeited their right to the surplus," and there was no unconstitutional taking. *Id.* Minnesota's scheme, by contrast, provided "no opportunity for the taxpayer to recover the excess value; once absolute title has transferred to the State, any excess value always remains with the State." *Id.*

Thus, because Minnesota's scheme—specifically Minn Stat § 282.08, which provides that if the county sells a foreclosed property any proceeds in excess of the tax debt "must" remain with the county—absolutely precludes a property owner from obtaining the surplus proceeds of a judicial sale, the Court held that Tyler "stated a claim under the Takings Clause and is entitled to just compensation." *Id.* at 639, 644.

### III.   PARTIES' ARGUMENTS

With the Tyler framework in mind, we turn to this case. As noted, plaintiff brought a section 1983 claim,

alleging that the County's retention of the surplus proceeds was an unconstitutional taking. The County moved to dismiss that claim, arguing, among other things, that *Tyler* is not controlling because Oregon's statutory foreclosure scheme is distinguishable from Minnesota's scheme at issue in *Tyler*. In making that argument, the County relied on *Nelson*. The County contended that ORS 312.070, which allows "[a]ny person interested in any real property" to timely file an answer and defense to the application for the foreclosure judgment provides—similar, in the County's view, to the ordinance in *Nelson*—an opportunity for a property owner to request surplus proceeds. Alternatively, the County argued that, even if *Tyler* controls, plaintiff's claim was untimely, contending that a two-year statute of limitations began to run in 2008 when the general judgment of foreclosure was entered.

In response to the County's motion, plaintiff argued that "Oregon employs the exact same [foreclosure] scheme as Minnesota," and thus *Tyler* is controlling. Plaintiff also argued that the statute of limitations began to run in 2022, when the state sold the property and obtained the surplus proceeds. The trial court granted the County's motion to dismiss after concluding that, unlike Minnesota's process, Oregon's foreclosure process does not prevent a property owner from making a claim on any surplus, and therefore the County did not conduct an unconstitutional taking.

Plaintiff appeals, renewing its arguments that the County committed an unconstitutional taking under *Tyler* and that its claim was timely because the statute of limitations began to run when the county sold the property.

## IV.   ANALYSIS

We review for errors of law the trial court's grant of an ORCP 21 motion to dismiss. *Hernandez v. Catholic Health Initiatives*, 311 Or App 70, 72, 490 P3d 166 (2021). In doing so, "we accept as true the allegations in the complaint, and any reasonable inferences that can be drawn from those allegations, viewing them in the light most favorable to the nonmoving party * * *." *Id.* (internal quotation marks omitted). As explained below, because Oregon's foreclosure scheme, similar

to Minnesota's, absolutely precludes an owner from obtaining the surplus proceeds of a judicial sale, we conclude that the County committed an unconstitutional taking under *Tyler*. However, we further conclude that the statute of limitations began to run in 2010 and thus plaintiff's claim was untimely.

A.  *Oregon's Foreclosure Statutes*

We begin by describing Oregon's foreclosure statutes before turning to the ultimate question whether they are similar to Minnesota's such that Tyler controls.[5] Under Oregon's statutes, real property is subject to foreclosure after three years of unpaid property taxes. ORS 312.010(1). The tax collector prepares a list of all properties subject to foreclosure and provides notice of each foreclosure proceeding by publication and mail. ORS 312.030; ORS 312.040. "Any person interested in any real property *** may file an answer and defense to the application for judgment" of foreclosure "within 30 days after the date of the first publication of the foreclosure list ***." ORS 312.070. In the absence of an objection or if the objection is overruled, the court enters a judgment of foreclosure. ORS 312.090.

After a property has been foreclosed, the property owner has two years to redeem the property by paying "the full amount applicable to the property under the judgment," plus interest and a penalty. ORS 312.120(2). Property that has not been redeemed within the two-year redemption period "shall be sold directly to the county for the respective amounts of taxes and interest for which the proprieties severally are liable," ORS 312.100, "shall be deeded to the county," ORS 312.200, and "every right or interest of any person in the property will be forfeited forever to the county," ORS 312.125(2)(c).

After the property is deeded to the county, the county retains all the rights of a fee-simple owner. *Westwood Homeowners Assn, Inc. v. Lane County*, 118 Or App 310, 313, 847 P2d 862, *aff'd*, 318 Or 146, 864 P2d 350 (1993), *adh'd to as modified on recons*, 318 Or 327, 866 P2d 463 (1994)

---

[5] The legislature amended Oregon's foreclosure statutes in 2025, partially in an effort to comply with *Tyler*. *See* HB 2089 (2025). Those amendments go into effect September 26, 2025. *Id*. We describe the statutory scheme as it was in effect before the amendments.

("Tax foreclosure statutes are intended to allow a government body to recover unpaid taxes and to vest in that body an indefeasible fee title in the taxed property."). Critically, if the county sells the property, the proceeds must be distributed to the county or local government according to the provisions set out in ORS 275.275. That statute does not include a provision allowing funds to be distributed to a former property owner.

B.   *Whether Oregon's Foreclosure Statutes Are Materially Similar to Minnesota's*

We turn to the question whether Oregon's scheme is similar to Minnesota's such that the Court's analysis in *Tyler* is controlling. Plaintiff argues that *Tyler* controls because, unlike the New York statutes in *Nelson*, Oregon's statutes do not provide a procedure for recovery of surplus funds and, similar to Minnesota's statutes, ORS 275.275 precludes a property owner from obtaining surplus proceeds.

The County counters that *Tyler* does not control because ORS 312.070, which allows a property owner to file an answer and defense in the foreclosure proceeding, provides an opportunity for the property owner to request any relief from foreclosure. As to ORS 275.275, which requires surplus proceeds to remain with the government, the County argues that that statute is superseded by the federal constitution, and thus, notwithstanding that statute, Oregon's scheme provides an opportunity to request surplus proceeds. Thus, the County argues, Oregon's foreclosure scheme does not absolutely preclude a property owner from requesting the surplus value. And because plaintiff did not take advantage of that opportunity—similar to the plaintiffs in *Nelson*—the County did not commit an unconstitutional taking.

We conclude that Oregon's statutory scheme is similar to Minnesota's such that *Tyler* controls. Similar to Minn Stat § 282.08, which requires "any proceeds in excess of the tax debt and the costs of the sale [to] remain with the County," ORS 275.275 requires any surplus proceeds to be apportioned to the county and local government. *Tyler*, 598 US at 635. And unlike the New York statutes at issue in *Nelson*, Oregon does

not have a statutory provision giving the court "'full power *** in a proper case to direct a sale of *** lands and the distribution or other disposition of the proceeds of the sale.'" 352 US at 110 n 10; *see also Lynch v. Multnomah County*, No 3:23 CV-01502-IM, 2024 WL 5238284 at *7 (D Or December 27, 2024) (Oregon's foreclosure scheme is "more akin to that in *Tyler* than *Nelson*, so *Tyler* controls").[6] Thus, Oregon's foreclosure scheme, like Minnesota's, is distinguishable from the scheme at issue in *Nelson*. Because ORS 275.275 precludes the property owner from claiming excess value or proceeds, the county commits an unconstitutional taking when it retains surplus proceeds or value.

The County's argument that, notwithstanding ORS 275.275, a property owner can bring a federal constitutional claim to surplus proceeds under Oregon's statutory scheme because the federal constitution supersedes state law, cannot be squared with the Court's analysis in *Tyler*. If the County were correct, the Court would have reached a different conclusion—that, notwithstanding Minn Stat § 282.08, which requires any surplus proceeds to remain with the County, the taxpayer had the opportunity under Minnesota's scheme to claim surplus proceeds, and thus there was no unconstitutional taking. As discussed above, however, the Court held that the taxpayer did not have that opportunity because "once absolute title has transferred to the State, any excess value always remains with the State," and thus the county committed an unconstitutional taking. *Tyler*, 598 US at 644. And because ORS 275.275—similar to Minn Stat § 282.08—requires surplus proceeds to remain with the County, *Tyler* (and, indeed, its antecedents and the longstanding legal principles upon which that case law is built) compels us to conclude that the County committed an unconstitutional taking here.

---

[6] In *Lynch*, the district court cited an *amicus* brief filed by the State of Oregon through the Attorney General, which stated that, under *Tyler*, "'counties cannot constitutionally retain surplus proceeds from foreclosure sales without allowing the owner a process to claim those funds,'" yet ORS 275.275 does not set forth a procedure to do that. *Lynch* at *5. To "'address that shortcoming,' the Oregon legislature enacted Oregon Laws 2024, chapter 77 (House Bill 4056), which *** directs counties to establish a process for determining the right to surplus *** and directs the Oregon Department of Revenue to coordinate with counties to comply with the *Tyler* decision." *Id.*

C.   *Statute of Limitations*

We next address the County's argument that, alternatively, we should affirm the trial court's ruling because plaintiff's claim was untimely. *See Sherertz v. Brownstein Rask*, 314 Or App 331, 341, 498 P3d 850 (2021), *rev den*, 369 Or 338 (2022) (we may affirm on an alternative basis when the argument was made in the trial court, presented again on appeal, and raises a question of law). Whether plaintiff's claim was untimely depends on which statute of limitations applies and when the claim accrued. The parties agree that the applicable statute of limitations for an action brought under 42 USC section 1983 is Oregon's time limit for personal injury actions, which is two years. *J. M. v. Oregon Youth Authority*, 364 Or 232, 236 n 4, 434 P3d 402 (2019) ("The statute of limitations for section 1983 claims 'is that which the [forum] [s]tate provides for personal-injury torts.'" (Quoting *Wallace v. Kato*, 549 US 384, 387, 127 S Ct 1091, 166 L Ed 2d 973 (2007).); ORS 12.110(1) (a personal injury action "shall be commenced within two years").

The accrual date of an action brought under section 1983 is a question of federal law. *Wallace*, 549 US at 388. Under federal law, a claim accrues when a plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citations omitted). Federal law governing accrual for section 1983 claims "require[s] a functional, and flexible, approach to the accrual rule that accounts for the nature of the alleged constitutional violation." *J. M.*, 364 Or at 238.

The County argues that plaintiff's claim accrued—that the taking or injury occurred—in 2008, when the general judgment of foreclosure was entered. In the County's view, the taking occurred in 2008 because the foreclosure judgment ended plaintiff's interest in the property—which the County contends included any interest in the surplus value—except for the statutory right to redemption. In contrast, plaintiff argues that its claim accrued in 2022 when the County sold plaintiff's property and obtained surplus proceeds. In plaintiff's view, "the property being taken is the surplus proceeds themselves, not the physical property."

Neither the United States nor Oregon Supreme Court has addressed the issue of accrual for the purposes of the statute of limitations in the context of a federal takings claim such as plaintiff's. Thus, there is no binding precedent that governs our conclusion. *See J. M. v. Oregon Youth Authority*, 288 Or App 642, 645-46, 406 P3d 1127 (2017), *aff'd*, 364 Or 232, 434 P3d 402 (2019) ("Oregon courts are bound by the Oregon Supreme Court's interpretation of federal law, regardless of any competing pronouncement by a lower federal court. * * * The only federal court that controls over the Oregon Supreme Court on matters of federal law is the United States Supreme Court.").

Based on our own analysis, we conclude that plaintiff's federal takings claim accrued in 2010, when the redemption period ended and plaintiff's property was deeded to the County. At that time, plaintiff had an equitable interest in the property, and the county's retention of any surplus value in the property was an unconstitutional taking.[7] *See Beaver Street Investments, LLC v. Summit County, Ohio*, 65 F4th 822, 827 (6th Cir 2023) (the statute of limitations began to run when the redemption period ended because the county could not have made a "final decision" to take the property until the redemption period concluded; if the plaintiff had redeemed the property the county would not have taken it); *see also Lynch* at *1 (the plaintiffs' takings claims "accrued on the expiration of the two-year Oregon statutory redemption period for foreclosed properties because that is when the property owners' rights to their properties were completely extinguished under ORS 312.200").

Under Oregon law, upon foreclosure, the property is sold, by court order, to the county for the amount of taxes owed. ORS 312.100. The property owner then has two years to redeem the property—and prevent the county from taking it—by paying the delinquent taxes plus any interest and penalties owed. ORS 312.120(2). Only when the property owner fails to redeem within two years is the property deeded to the county, effectively finalizing the forced sale

---

[7] We note that our conclusion that plaintiff had an equitable interest in its property is consistent with *Lawton*, where the Court held that the taxpayer was entitled to the surplus value of the property when the government kept the property rather than sold it. 110 US at 149-50.

to the county and completely extinguishing the property owner's rights to the property.[8] ORS 312.200 (properties not redeemed within the two-year period shall be deeded to the county); ORS 312.125(2)(c) (when property is deeded to the county upon expiration of the redemption period, "every right or interest of any person in the property [is] forfeited forever to the county").

Accordingly, when the right of redemption expires, any claim for taking of the excess value of the property has accrued because, at that point in time, the county will have retained all value in excess of the "sale" price, with no further state-law mechanism to recover that value. In other words, that is when the constitutional violation occurs—when the county takes the property without just compensation. Thus, plaintiff had "a complete and present cause of action" and could have filed suit and obtained relief. *Wallace*, 549 US at 388 (internal quotation marks and citations omitted); *see Knick v. Township of Scott*, 588 US 180, 194, 139 S Ct 2162, 204 L Ed 2d 558 (2019) ("[B]ecause a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time."). Consequently, because plaintiff brought its claim outside of the statute of limitations, the trial court did not err in dismissing that claim.[9]

Affirmed.

---

[8] Following the redemption period, under ORS 275.090 and ORS 275.110, it is entirely within the county's discretion whether to sell the property.

[9] We are not persuaded that the reasoning of the cases that plaintiff relies on—*Davenport v. Town of Reading*, No 22-12239-RGS, 2024 WL 4495105 (D Mass October 15, 2024) and *Sikorsky v. City of Newburgh*, 136 F4th 56, 62 (2d Cir 2025)—compels a different result. In both cases, the courts did not set forth detailed analysis in reaching their conclusions that the plaintiffs' claims accrued when the government sold the properties. Additionally, the court in *Sikorsky* took "no position" on whether a claim might accrue where the government retains the property "for an unreasonable period." 136 F4th at 62 n 3.